**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

WIND TOWER TRADE COALITION

Plaintiff,

v.

UNITED STATES,

Defendant,

and

DONGKUK S&C CO., LTD.,

Defendant-Intervenor.

Before: Hon. Leo M. Gordon, Judge

Court No. 24-00070

## WIND TOWER TRADE COALITION RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiff Wind Tower Trade Coalition ("WTTC" or "Plaintiff"), by and through its attorneys, respectfully moves for judgment on the agency record with respect to the final administrative determination issued by the U.S. Department of Commerce (the "Department"), in the 2021-2022 administrative review of the antidumping duty order on *Utility Scale Wind Towers from the Republic of Korea*, 89 Fed. Reg. 16,544 (Dep't of Commerce Mar. 7, 2024) and accompanying Issues and Decision Memorandum.

WTTC respectfully moves, for the reasons explained in the accompanying memorandum, that this Court find that agency findings, conclusions, and decisions with respect to this decision are unexplained, not supported by substantial evidence, or otherwise not in accordance with law. WTTC further moves that the Court remand this determination to the Department for disposition consistent with the Court's final opinion.

**Court No. 24-00070**

Respectfully submitted,

*/s/ Robert E. DeFrancesco*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Laura El-Sabaawi, Esq.
Tatiana Sainati, Esq.
John Allen Riggins, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Wind Tower Trade Coalition*

Dated: September 10, 2024

Court No. 24-00070

### IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WIND TOWER TRADE COALITION** | |
| Plaintiff, | **Before: Hon. Leo M. Gordon, Judge** |
| v. | |
| UNITED STATES, | |
| Defendant, | **Court No. 24-00070** |
| and | |
| DONGKUK S&C CO., LTD., | |
| Defendant-Intervenor. | |

### <u>ORDER</u>

Upon consideration of Plaintiff Wind Tower Trade Coalition's ("WTTC" or "Plaintiff") Rule 56.2 Motion for Judgment on the Agency Record and the accompanying memorandum, and upon all other papers filed and proceedings had herein, it is hereby

**ORDERED** that the WTTC's motion for judgment on the agency record is granted; and it is further

**ORDERED** that this action is remanded to the U.S Department of Commerce for proceedings consistent with this Court's opinion.

Dated: _____          _____
          New York, New York                  Hon. Leo M. Gordon, Judge

NON-CONFIDENTIAL VERSION

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **WIND TOWER TRADE COALITION**<br><br>                  **Plaintiff,**<br><br>   v.<br><br>**UNITED STATES,**<br><br>              **Defendant,**<br><br>   and<br><br>**DONGKUK S&C CO., LTD.,**<br><br>            **Defendant-Intervenor.** |

Before: Hon. Leo M. Gordon,
       Senior Judge

Court No. 24-00070

<u>NON-CONFIDENTIAL VERSION</u>

Business Proprietary Information
Removed from Pages: 8, 10, 12-13

<u>**WIND TOWER TRADE COALITION MEMORANDUM OF LAW
IN SUPPORT OF RULE 56.2 MOTION
FOR JUDGMENT ON THE AGENCY RECORD**</u>

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Laura El-Sabaawi, Esq.
Tatiana Sainati, Esq.
John Allen Riggins, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Wind Tower Trade Coalition*

Dated:  September 10, 2024

Court No. 24-00070                                    NON-CONFIDENTIAL VERSION

# TABLE OF CONTENTS

Page

I.   STATEMENT PURSUANT TO RULE 56.2(C)..............................................................1

   A.   Administrative Determination Under Review..............................................1

   B.   Issues Presented..................................................................................1

   C.   Request for Court Order and Relief Sought ...............................................2

II.  ARGUMENT .........................................................................................................2

   A.   The Department's Interpretation of 19 U.S.C. § 1677b(f)(1)(A) in the Final Results was Not In Accordance with Law........................................................................................2

      1.   Standard of Review ......................................................................2

      2.   The Department Erred by Misinterpreting and Misapplying the Statutory Language Regarding Whether Dongkuk's Records Reasonably Reflected the Costs Associated with the Production and Sale of Subject Merchandise .................................................3

   B.   The Department Unlawfully Departed from Its Established Practice When It Failed to Adjust Differences in Conversion Costs That Were Unrelated to the Physical Characteristics of the Subject Merchandise........................................................................................5

      1.   Standard of Review .......................................................................5

      2.   The Department's Practice, Consistent with the Statute, Is to Adjust Conversion Costs That Are Unrelated to the Physical Characteristics of the Wind Tower......................6

   C.   The Department Failed to Articulate a Rational Connection Between the Cost Impact of Internal Components on CONNUMs and the Decision to Accept Dongkuk's Conversion Costs Without Modification..............................................................................................9

      1.   Standard of Review .......................................................................9

      2.   The Department's Conclusion that Differences in the Internal Components Are Responsible for Variations of Conversion Costs Across CONNUMs is Arbitrary and Unexplained. ...........................................................................10

III. CONCLUSION .....................................................................................................13

Court No. 24-00070                                    NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bando Chem. Indus., Ltd.v. United States,*
    16 CIT 133, 787 F. Supp. 224 (1992) ................................................................8, 10

*BlueScope Steel, Ltd. v. United States,*
    Consol. Court. No. 22-00353, slip op. 24-88 (Ct. Int'l Trade Aug. 1, 2024) ...........6

*China First Pencil Co. v. United States,*
    34 CIT 1284, 721 F. Supp. 2d 1369 (2010) .....................................................9, 11

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024) ......................................................................................2, 4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ............................................................................................10

*NMB Sing. Ltd. v. United States,*
    557 F.3d 1316 (Fed. Cir. 2009) ........................................................................5, 9

*SKF USA Inc. v. United States,*
    263 F.3d 1369 (Fed. Cir. 2001) ...........................................................................5

*Suramerica de Aleaciones Laminadas, C.A. v. United States,*
    44 F.3d 978 (Fed. Cir. 1994) ...........................................................................9, 13

*Thai Plastic Bags Indus. Co., Ltd. v. United States,*
    746 F.3d 1358 (Fed. Cir. 2014) .........................................................................4, 6

*Transactive Corp. v. United States,*
    91 F.3d 232 (D.C. Cir. 1996) ...............................................................................9

*United States v. Marrow,*
    266 U.S. 531 (1925) .............................................................................................3

*Universal Camera Corp. v. N.L.R.B.,*
    340 U.S. 474 (1951) .............................................................................................9

**Statutes**

19 U.S.C. § 1516a(b)(1) ...............................................................................2, 9, 13

19 U.S.C. § 1677b(f)(1)(A) .......................................................................1, 2, 3, 4, 6

Court No. 24-00070                                          NON-CONFIDENTIAL VERSION

**Administrative Materials**

*Carbon and Alloy Steel Wire Rod From the Republic of Korea,*
    83 Fed. Reg. 13,228 (Dep't Commerce Mar. 28, 2018) ......................................3, 4, 6

*Certain Oil Country Tubular Good From the Republic of Korea,*
    82 Fed. Reg. 18,105 (Dep't Commerce Apr. 17, 2017).............................................7

*Certain Steel Nails From the Republic of Korea,*
    83 Fed. Reg. 4,028 (Dep't Commerce Jan. 29, 2018) .............................................7

*Circular Welded Non-Alloy Steel Pipe From the Republic of Korea,*
    78 Fed. Reg. 35,248 (Dep't of Commerce June 12, 2013) ......................................6

*Utility Scale Wind Towers From Indonesia,*
    85 Fed. Reg. 40,231 (Dep't Commerce July 6, 2020) .................................... *passim*

*Utility Scale Wind Towers From the Republic of Korea,*
    89 Fed. Reg. 16,544 (Dep't of Commerce Mar. 7, 2024)................................ *passim*

*Welded Carbon Steel Standard Pipe and Tube Products From Turkey,*
    82 Fed. Reg. 49,179 (Dep't Commerce Oct. 24, 2017) .........................................7

Court No. 24-00070                                              NON-CONFIDENTIAL VERSION

## MEMORANDUM IN SUPPORT OF MOTION
## FOR JUDGMENT UPON THE AGENCY RECORD

Plaintiff Wind Tower Trade Coalition ("Plaintiff" or "WTTC") respectfully submits this memorandum in support of WTTC's Rule 56.2 motion for judgment on the agency record in this action.

## I.   STATEMENT PURSUANT TO RULE 56.2(C)

### A.   Administrative Determination Under Review

The administrative determination subject to this appeal is the final results of the U.S. Department of Commerce ("Commerce" or the "Department") in the 2021-2022 administrative review of the antidumping duty order on *Utility Scale Wind Towers From the Republic of Korea*, 89 Fed. Reg. 16,544 (Dep't of Commerce Mar. 7, 2024) and accompanying Issues and Decision Memorandum ("Final Results").

### B.   Issues Presented

(1) Whether the Department's interpretation of 19 U.S.C. § 1677b(f)(1)(A) (the "Statute") was "not in accordance with law" where the Department calculated Dongkuk S&C Co. Ltd.'s ("Dongkuk") costs based on Dongkuk's records and, in doing so, misinterpreted the statutory language directing the agency only to do so "*if* such records . . . reasonably reflect the costs associated with the production and sale of the merchandise";[1]

(2) Whether the Department's departure from its normal practice, as demonstrated most clearly in the highly relevant decision in *Utility Scale Wind Towers From Indonesia*, 85 Fed. Reg. 40,231 (Dep't Commerce July 6, 2020) at cmt. 5 ("Indonesia Decision Memorandum"), was "not in accordance with law" where it refused to adjust Dongkuk's reported conversion

---

[1]    Unless otherwise indicated all emphases are added and all quotations have been cleaned up.

costs to mitigate differences not associated with the wind towers' physical characteristics when calculating costs under the Statute;

(3) Whether the Department failed to support with substantial evidence its conclusion that "CONNUMs vary in complexity with regard to bus bars, conduits, elevators, platforms, and other internal components, all of which are reflected in the CONNUM and impact the costs associated with producing different CONNUMs," despite record evidence to the contrary.

### C.      **Request for Court Order and Relief Sought**

The WTTC respectfully requests that the Court remand the challenged agency action for further consideration regarding the issues identified in Subsection B above.

## II.      **ARGUMENT**

### A.      **The Department's Interpretation of 19 U.S.C. § 1677b(f)(1)(A) in the Final Results was Not In Accordance with Law**

#### 1.      **Standard of Review**

In reviews of the Department's decisions in administrative reviews, this Court will "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1). An agency interpretation that does not comply with the governing statutory requirement fails to be "in accordance with law." Even where the language of a statute is arguably ambiguous, this Court must exercise its "independent judgment" to determine the "best reading" of the governing statute—here, 19 U.S.C. § 1677b(f)(1)(A)—which is the "reading the court would have reached if no agency were involved" in its application. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2264-65 (2024).

Court No. 24-00070

2.      **The Department Erred by Misinterpreting and Misapplying the Statutory Language Regarding Whether Dongkuk's Records Reasonably Reflected the Costs Associated with the Production and Sale of Subject Merchandise**

The plain language of 19 U.S.C. § 1677b(f)(1)(A) and controlling U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") precedent limit the use of an exporter's reported costs to circumstances where those costs reflect the physical characteristics of the subject merchandise. The Statute provides that "{c}osts shall normally be calculated based on the records of the exporter or producer of the merchandise, *if* such records . . . reasonably reflect the costs associated with the production and sale of the merchandise." The term "if" is conditional; the statute thus conditions the use of the exporter's or producer's records to calculate costs on those records reflecting "costs associated with the production and sale of the merchandise." *Id.* If that condition is not met, then the rule is not triggered—and the costs should normally *not* be calculated based on the exporter's records. *See* Proviso Canon, *Black's Law Dictionary* (11th ed. 2019) ("{A} proviso in a legal instrument {that} conditions only the principal matter that it qualifies—almost always the matter immediately preceding."); *see also United States v. Marrow*, 266 U.S. 531, 534-35 (1925) ("The general office of a proviso is to except something from the enacting clause, or to qualify and restrain its generality and prevent misinterpretation."). The Department has historically accepted this interpretation as correct. *See* Issues and Decision Memorandum accompanying *Carbon and Alloy Steel Wire Rod From the Republic of Korea*, 83 Fed. Reg. 13,228 (Dep't Commerce Mar. 28, 2018) at cmt. 1 ("Wire Rod Decision Memorandum") ("Accordingly, we are instructed by the Act to rely on the company's normal books and records if two conditions are met: (1) the books are kept in accordance with the home country's Generally Accepted Accounting Principles (GAAP); and (2) the books reasonably reflect the cost to produce and sell the merchandise.").

As the Department has previously explained, costs "associated with the production and sale of the merchandise" are those costs "attributable to different physical characteristics of the merchandise." *See Thai Plastic Bags Indus. Co., Ltd. v. United States*, 746 F.3d 1358, 1366 (Fed. Cir. 2014) (concluding that producer's reported costs could not be used under 19 U.S.C. § 1677b(f)(1)(A) because they were not "based on physical characteristics" of the product); *see also* Wire Rod Decision Memorandum at cmt. 1 ("{A} respondent's costs should reflect meaningful cost differences attributable to these different physical characteristics. . . . Thus, the Department normally does not rely on a respondent's reported costs where cost differentials between CONNUMs are driven by factors other than the CONNUM physical characteristics, such as timing differences or routing variations or cost system conventions."). The Federal Circuit upheld this logic, concluding that "requiring that conversion costs reflect cost differences *attributable to different physical characteristics* . . . ensure{s} that the product-specific costs . . . reflect{} the costs incurred by {the producer} to obtain the corresponding product's physical characteristics." *Thai Plastic Bags*, 746 F.3d. at 1368. In reaching this conclusion, the Federal Circuit emphasized that linking "costs associated with the production and sale" to a product's physical characteristics makes sense because "physical differences in products generally account for major differences in costs." *Id.* at 1366, 1368. Accordingly, the best interpretation of the Statute is one that conditions use of a producer's records to calculate costs to circumstances where those records reflect costs attributable to the physical characteristics of the merchandise. *See Loper Bright*, 144 S. Ct. at 2264-65 (requiring a court to adopt the best interpretation of statute).

Here, there is no real dispute that the Department used Dongkuk's records of its conversion costs even though those costs are unrelated to the physical characteristics of the wind towers. Dongkuk freely concedes that its conversion costs "are akin to fixed costs *that are not impacted*

Court No. 24-00070                                    NON-CONFIDENTIAL VERSION

*by the product characteristics of the produced merchandise.*"   Dongkuk's BCD Questionnaire

Response (Jan. 3, 2023), C.D. 15-16, P.D. 38 at SD-25 – SD-26.  And the Department found that

Dongkuk "reported its conversion costs based on its normal books and records," while failing to

correctly interpret and apply the statutory requirement that a producer's costs must also "reflect

the costs associated with the production and sale of the merchandise" to be used in calculating

costs.  Final Results at cmt. 3.

     Based on this misinterpretation, the Department incorporated Dongkuk's "as-reported"

costs in the agency's final margin calculation. *See generally* Final Results Margin Calculation for

Dongkuk (Mar. 1, 2024), C.D. 64-66, P.D. 94 (listing the databases the Department relied on in its

final results and the adjustments the Department made to Dongkuk's reported information, which

do not include adjustments to conversion costs).  Because the statutory requirement for relying on

Dongkuk's conversion costs was not met, the Department erred in using those costs, and the Final

Results must accordingly be remanded.

> **B.**    **The Department Unlawfully Departed from Its Established Practice When It**
> **Failed to Adjust Differences in Conversion Costs That Were Unrelated to the**
> **Physical Characteristics of the Subject Merchandise**

> **1.**    **Standard of Review**

     The agency acts unlawfully when it deviates from established practice without providing a

satisfactory explanation.  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001)

("{I}t is well-established that an agency action is arbitrary when the agency offer{s} insufficient

reasons for treating similar situations differently."); *see also NMB Sing. Ltd. v. United States*, 557

F.3d 1316, 1328 (Fed. Cir. 2009) ("Once Commerce establishes a course of action . . . Commerce

is obliged to follow it until Commerce provides a sufficient, reasoned analysis explaining why a

change is necessary.").  This Court has recently explained that an unlawful departure from

established agency action requires: (1) "demonstrat{ing} that an established practice exists," (2) "demonstrat{ing} a departure from the practice," and (3) "demonstrat{ing} that the departure is insufficiently explained." *BlueScope Steel, Ltd. v. United States*, Consol. Court. No. 22-00353, slip op. 24-88 at 14 (Ct. Int'l Trade Aug. 1, 2024).

### 2. The Department's Practice, Consistent with the Statute, Is to Adjust Conversion Costs That Are Unrelated to the Physical Characteristics of the Wind Tower

The Final Results must also be remanded because the Department departed from its past practice by accepting Dongkuk's conversion costs even though those costs are unrelated to the physical characteristics of the wind towers. The Department has previously explained that "allocating costs based on physical characteristics is most certainly the primary factor in a cost analysis." *Thai Plastic Bags*, 746 F.3d at 1366. Accordingly, the Department has established a practice of adjusting a producer's costs if they do not "reasonably reflect the costs associated with the production and sale of the {subject} merchandise"—*i.e.*, the costs associated with the merchandise's physical characteristics. *Id.* (quoting 19 U.S.C. § 1677b(f)(1)(A)); *see also* Indonesia Decision Memorandum at cmt. 5 (When reported costs do not reflect costs associated with physical characteristics of the merchandise "it is Commerce's normal practice to adjust costs to address the distortions{.}"); Wire Rod Decision Memorandum at cmt. 1 ("Commerce normally does not rely on a respondent's reported costs where cost differentials between CONNUMs are driven by factors other than the CONNUM physical characteristics."); Issues and Decision Memorandum accompanying *Circular Welded Non-Alloy Steel Pipe From the Republic of Korea*, 78 Fed. Reg. 35,248 (Dep't of Commerce June 12, 2013) at cmt. 6 ("We . . . have continued to reallocate the company's raw material and fabrication costs to mitigate cost differences that are unrelated to the reported products' physical characteristics."); Issues and Decision Memorandum

accompanying *Certain Cut-to-Length Carbon-Quality Steel Plate Products From the Republic of Korea*, 81 Fed. Reg. 62,712 (Dep't of Commerce Sept. 12, 2016) at cmt. 1 ("Hyundai Steel's reported costs are distortive because they result in significant cost differences for very similar models and these cost differences are the result of factors other than the physical characteristics. Our recalculation of Hyundai Steel's reported conversion costs reasonably mitigates the distortions{.}"); Issues and Decision Memorandum accompanying *Certain Oil Country Tubular Good From the Republic of Korea*, 82 Fed. Reg. 18,105 (Dep't Commerce Apr. 17, 2017) at cmts. 22 & 23 ("{B}ecause the HRC costs reported in the revised cost database . . . reflect the production order-specific HRC consumption costs, this methodology resulted in unusual cost variations, and, therefore, the differences in HRC costs between products were unrelated to the product physical characteristics . . . . Thus, we find that the HRC costs reported . . . do not reasonably reflect the costs associated with the production and sale of the subject merchandise."); Issues and Decision Memorandum accompanying *Welded Carbon Steel Standard Pipe and Tube Products From Turkey*, 82 Fed. Reg. 49,179 (Dep't Commerce Oct. 24, 2017) at cmt. 2; Issues and Decision Memorandum accompanying *Certain Steel Nails From the Republic of Korea*, 83 Fed. Reg. 4,028 (Dep't Commerce Jan. 29, 2018) at cmt. 3 (adjusting reported costs as distortive because they were unrelated to the physical characteristics of the products).

The Department's decision in *Utility Scale Wind Towers from Indonesia* is directly on point. In that case, the respondent allocated conversion costs among wind tower units on a monthly basis. Indonesia Decision Memorandum at cmt. 5. To determine whether the respondent's reported data reflected costs associated with the physical characteristics of the merchandise, the Department "assess{ed} the degree to which the CONNUM-specific conversion costs per-MT corresponded with the overall average conversion costs per-MT." *Id.* The analysis revealed that

total CONNUM-specific conversion costs per-MT deviated significantly—by more than 10%—from the overall average.  *Id.*  The Department concluded that the reported conversion costs "were solely influenced by production timing"—not the physical characteristics of the wind towers.  *Id.* The Department accordingly adjusted the reported costs to address these distortions, consistent with its "normal practice."  *Id.*

Here, as in *Wind Towers from Indonesia*, Dongkuk allocates conversion costs by production quantity on a monthly basis.  Dongkuk's Supplemental D Questionnaire Response (June 8, 2023), C.D. 37-44, P.D. 60 at SD-25.  And here, as in *Wind Towers from Indonesia*, this methodology results in a deviation of more than 10 percent between "total CONNUM-specific conversion costs per-MT" and "the overall average."  Comments on Dongkuk's Initial Questionnaire Responses (Mar. 17, 2023), C.D. 25-26, P.D. 41 at 3-4.  Indeed, the overall weighted average variation of the conversion costs across all products was [        ]%.  WTTC Case Brief (Oct. 13, 2023), C.D. 59, P.D. 82 at 4.  But unlike *Wind Towers from Indonesia*—where the Department concluded that an overall average deviation of more than 10% demonstrated that the reported conversion costs required adjustment—here, the Department found "no basis to reallocate Dongkuk's conversion costs," improperly departing from its established practice.  Final Results at cmt. 3.

The Department also failed to adequately explain this departure.  The Department's sole justification for this departure from its "normal practice," Indonesia Decision Memorandum at cmt. 5, was the assertion that "each administrative review is a separate segment of a proceeding with its own unique facts," Final Results at cmt. 3.  This explanation will not suffice.  *See Bando Chem. Indus., Ltd.v. United States*, 16 CIT 133, 136, 787 F. Supp. 224, 227 (1992) ("{T}hat an administrative agency may make varying decisions based on the facts of particular cases does not

permit the agency to act arbitrarily.").  The Department has "establishe{d} a course of action," in

calculating the costs of production and constructed value under the Statute and "Commerce is

obliged to follow" that course of action "until {it} provides a sufficient, reasoned analysis

explaining why a change is necessary."  *NMB Singapore*, 557 F.3d at 1328; *see also Transactive

Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996) ("A long line of precedent has established

that an agency action is arbitrary when the agency offered insufficient reasons for treating similar

situations differently.").  For this reason, too, the Final Results must be remanded so that the

Department can reconsider its analysis consistent with its established practice.  *NMB Singapore*,

557 F.3d at 1328.

C.    **The Department Failed to Articulate a Rational Connection Between the Cost Impact of Internal Components on CONNUMs and the Decision to Accept Dongkuk's Conversion Costs Without Modification**

1.    **Standard of Review**

This Court will "hold unlawful any determination, finding, or conclusion found . . . to be

unsupported by substantial evidence on the record, or otherwise not in accordance with law."

19 U.S.C. § 1516a(b)(1).  Substantial evidence requires "more than a mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951).  Substantial evidence requires a

review of the entire record, and the Department "must take into account whatever in the record

fairly detracts from its weight{,}" including "contradictory evidence or evidence from which

conflicting inferences could be drawn."  *Suramerica de Aleaciones Laminadas, C.A. v. United

States*, 44 F.3d 978, 985 (Fed. Cir. 1994).  "There must be a 'rational connection between the facts

found and the choice made' in an agency determination if it is to be characterized as supported by

substantial evidence and otherwise in accordance with law."  *China First Pencil Co. v. United

*States*, 34 CIT 1284, 1286, 721 F. Supp. 2d 1369, 1372 (2010).  The Department's decision also is unsupported by substantial evidence if it is arbitrary.  *See id.* at 1290-1291, 721 F. Supp. 2d at 1375-1376.  The agency's determinations "must have a reviewable, reasoned basis," *Bando Chem.*, 16 CIT at 136, 787 F. Supp. at 227, and must be supported by a "satisfactory explanation . . . including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

> **2.      The Department's Conclusion that Differences in the Internal Components Are Responsible for Variations of Conversion Costs Across CONNUMs is Arbitrary and Unexplained.**

In the underlying review, the WTTC provided an analysis that compared reported conversion costs for each type of tower Dongkuk sold during the period of review. WTTC Pre-Prelim Comments (July 10, 2023), C.D. 45-46, P.D. 62 at Exhibit 1. The WTTC's analysis listed each CONNUM—*i.e.*, unique type of tower—reported in Dongkuk's sales databases and the corresponding, per-tower-section conversion cost that Dongkuk reported for the tower. *Id.* As discussed, the analysis showed that there were substantial variations in Dongkuk's reported conversion costs for different CONNUMs that could not be explained by each CONNUMs' physical characteristics. *Id.* Overall, the weighted average variation of the conversion costs across all products was [      ]%, *id.*, which was similar to the variance in prior cases where the Department adjusted a respondent's costs. Indonesia Decision Memorandum at cmt. 5. In fact, one CONNUM's per-section conversion costs deviated more than [      ]% from the average per-section conversion costs. *See* WTTC Pre-Prelim Comments at Exhibit 1. After identifying these extreme variances, the WTTC provided an adjustment that would reallocate these costs more consistently based on a methodology that the Department has applied under similar circumstances in previous cases. *See id.*; *see also* Indonesia Decision Memorandum at cmt. 5.

For the Final Results, the Department stated that it disagreed with WTTC's analysis. The Department went on to explain that WTTC's analysis compares "the variation in average conversion costs per tower section relative to the overall average conversion costs for all tower sections in the cost database." Final Results at cmt. 3. The Department questioned this methodology because it "does not consider that the CONNUMs vary in complexity with regard to bus bars, conduits, elevators, platforms, and other internal components, all of which are reflected in the CONNUM and impact the costs associated with producing different CONNUMs." *Id.* The Department failed to explain how differences in the complexity of various components creates the substantial differences in Dongkuk's conversion costs *among* CONNUMs identified by WTTC. *See* WTTC Case Brief at 4 & n.10. The Department also failed to articulate how variations in the complexity of relatively insignificant components of a wind tower cause the significant overall weighted average variation of the conversion costs for all CONNUMs. *See id.* at 4. Simply put, the Department failed to establish a "connection between the facts found"—*i.e.*, that the parts of a wind tower differ in their complexity—and the choice the Department made—*i.e.*, to depart from past practice and accept reported costs that were unrelated to the physical characteristics of the wind tower. *See China First*, 34 CIT at 1286, 721 F. Supp. 2d at 1372.

Not only did the Department fail to support its conclusion about the impact of bus bars, conduits, elevators, platforms, and other internal components have on conversion costs, but the agency's hypothesis is contrary to record evidence.[2] To start, bus bars and elevators could not

---

[2]     For the Court's convenience, any discussion of Dongkuk's reported CONNUMs is based Exhibit 1 of our July 20, 2023 Comments, which reflects the sales reported in Dongkuk's sales database reporting. *See* WTTC Pre-Prelim Comments at Exhibit 1.

possibly contribute to the conversion cost variance between CONNUMs[3] because bus bars and

elevators [                                        ].  That is, the fields corresponding to bus bars (*i.e.*,

field 7) and elevators (*i.e.*, field 9) [                                        ].  WTTC Pre-Prelim

Comments at Exhibit 1; *see also* DOC Initial Questionnaire at B-12.[4]  Therefore, the record does

not support the Department's conclusion that bus bars and elevators could impact conversion cost

variances.

The Coalition's conversion cost analysis also demonstrates that the Department's

references to "conduits . . ., platforms, and other internals" is likewise unsupportable.  [

], which enables a controlled analysis of conversion

cost variances between towers with and without certain components.  *See* WTTC Pre-Prelim

Comments at Exhibit 1.  This simple analysis demonstrates that the presence or absence of these

components is not reflected in the conversion costs as reported.

For example, CONNUMs [                                        ] and [

] have [                                        ], except for [                                        ]

and [                    ]—*i.e.*, [                                        ] while [

].  *Id.*  However, [                        ] have [                        ] per-section conversion costs

despite having [                        ].  *See id.*  In addition, CONNUM [

---

[3]     The CONNUM for wind towers has 11 fields. *See, e.g.*, DOC Initial Questionnaire (Nov.
4, 2022), P.D. 19-20 at B-7 – B-13. Each field represents a characteristic of a utility scale wind
tower (listed in order of descending importance). These 11 fields are listed in the following order
in the CONNUM: (1) Type, (2) Weight of Tower/Section, (3) Height of Tower/Section, (4) Total
Sections, (5) Type of Paint Coating, (6) Metalizing, (7) Electrical Conduit – Bus Bars,
(8) Electrical Conduit – Power Cables, (9) Elevators, (10) Number of Platforms, (11) Other
Internal Components. *See id.*

[4]     The fields corresponding to paint and metalizing [                                        ].
WTTC Pre-Prelim Comments at Exhibit 1; *see also* DOC Initial Questionnaire at B-11 – B-12.

] reported [                ] conversion costs than CONNUM [

], even though there were [                ] reported for conduits, platforms, and other

internals.  *Id.*  In fact, the only product characteristic distinction between the two towers was [

].  *See id*.  Further, CONNUM [

] has [                                                    ], while CONNUM

[                                                                ].  *See*

*id.  See also* DOC Initial Questionnaire at B-13.  Although there are only [

], the per-section conversion costs for the two sales are [                ], with

a difference of only [    ] percent.  *See* WTTC Pre-Prelim Comments.  As such, CONNUMs with

identical or similar components have drastically different per-section conversion costs, while

CONNUMs with different components can have conversion costs that are virtually equal.  This

plain record evidence undermines the Department's unsupported theory that differences in a wind

tower's components caused the per-section conversion cost variances.  The Department

impermissibly failed to take into account this evidence.  *Suramerica*, 44 F.3d at 985.

Accordingly, the Department's Final Results are not supported by "substantial

evidence. . . or otherwise in accordance with law" and the decision must be remanded.  19 U.S.C.

§ 1516a(b)(1).

## III.   <u>CONCLUSION</u>

For the foregoing reasons, WTTC respectfully submits that the Court should remand the

Department's Final Results in the 2021-2022 administrative review of utility scale wind towers

from the Republic of Korea for further consideration.

**Court No. 24-00070**                                          NON-CONFIDENTIAL VERSION

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Laura El-Sabaawi, Esq.
Tatiana Sainati, Esq.
John Allen Riggins, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Wind Tower Trade Coalition*

Dated:  September 10, 2024

14

**Court No. 24-00070**

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Scheduling Order (July 18, 2024), ECF No. 21, the undersigned certifies that this brief complies with the word limitation requirement. The word count for Memorandum of Law in Support of Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 3,882 words.

<u>*/s/ Robert E. DeFrancesco, III*</u>
(Signature of Attorney)

<u>Robert E. DeFrancesco, III</u>
(Name of Attorney)

<u>Wind Tower Trade Coalition</u>
(Representative Of)

<u>September 10, 2024</u>
(Date)