## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WIND TOWER TRADE COALITION,<br><br>                Plaintiff,<br><br>   v.<br><br>UNITED STATES,<br><br>                Defendant,<br><br>   and<br><br>DONGKUK S&C CO. LTD.<br><br>                Defendant-Intervenor. | Before: Hon. Leo M. Gordon, Judge<br><br>Court No. 24-00070<br><br>Confidential Information has been deleted on Pages 2, 3, and 7<br><br>**Public Version** |

### RESPONSE OF
### DONGKUK S&C CO., LTD. IN OPPOSITION TO PLAINTIFF'S
### RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

 

Jarrod M. Goldfeder
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated: January 15, 2025

*Counsel to Dongkuk S&C Co., Ltd.
Defendant-Intervenor*

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| WIND TOWER TRADE COALITION,<br><br>               Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>               Defendant,<br><br>     and<br><br>DONGKUK S&C CO. LTD.<br><br>               Defendant-Intervenor. | Before: Hon. Leo M. Gordon, Judge<br><br>Court No. 24-00070 |

**ORDER**

Upon consideration of Plaintiff's motion for judgment on the agency record, Defendant and Defendant Intervenor's responses, and all other papers and proceedings herein; it is hereby:

**ORDERED** that Plaintiff's motion is denied; and it is further

**ORDERED** that the final results with respect to <u>Utility Scale Wind Towers from the Republic of Korea</u>, 89 Fed. Reg. 16,544 (Dep't Commerce Mar. 7, 2024), are hereby affirmed.

                                                  By: _____
                                                        Leo M. Gordon, Judge

Dated: _____

Consol. Court No. 24-00070                                                                          Public Version

# **TABLE OF CONTENTS**

I.     RULE 56.2 STATEMENT ................................................................................................1

II.    STANDARD OF REVIEW ..............................................................................................2

III.   ARGUMENT.....................................................................................................................2

       A.    PLAINTIFF FAILS TO PROVIDE ANY LEGAL OR FACTUAL BASIS WHY COMMERCE'S DETERMINATION NOT TO ADJUST DKSC'S CONVERSION COSTS SHOULD BE REMANDED ...........................................2

             1.   DKSC's Cost Allocation Methodology Was Reasonable Given Substantial Evidence on the Record .............................................................3

             2.   DKSC's Conversion Costs Reasonably Reflect Costs Associated with the Production of Wind Towers............................................................5

IV.    CONCLUSION .................................................................................................................9

Consol. Court No. 24-00070                      Public Version

# TABLE OF AUTHORITIES

**Statutes**

19 U.S.C. § 1677b(f)(1)(A) .................................................................................................. 2, 6

**Court Precedent**

Fujitsu Gen. v. United States, 88 F.3d 1034 (Fed. Cir. 1996) ................................................. 9

Smith-Corona Grp. v. United States, 713 F.2d 1568 (Fed. Cir. 1983) .................................... 9

United States v. Zenith Radio Corp., 64 CCPA 130, 562 F.2d 1209 (1977), aff'd, 437 U.S. 443 (1978) ............................................................................................................................... 9

**Administrative Determinations**

Carbon and Alloy Steel Threaded Rod from India, 88 Fed. Reg. 75,265 (Dep't Commerce Nov. 2, 2023) ............................................................................................................................. 8

Certain Steel Nails from Malaysia, 80 Fed. Reg. 28,969 (Dep't Commerce May 20, 2015) ......... 8

Dioctyl Terephthalate from the Republic of Korea, 82 Fed. Reg. 28,824 (Dep't Commerce June 26, 2017) ............................................................................................................................ 8

Utility Scale Wind Towers from the Republic of Korea, 85 Fed. Reg. 40,243 (Dep't Commerce July 6, 2020) ..................................................................................................................... 3

Utility Scale Wind Towers from the Republic of Korea, 88 Fed. Reg. 13,428 (Dep't Commerce Mar. 3, 2023) .................................................................................................................... 3

Utility Scale Wind Towers from the Republic of Korea, 89 Fed. Reg. 16,544 (Dep't Commerce Mar. 7, 2024) .................................................................................................................... 1

Utility Scale Wind Towers from the Republic of Korea, 89 Fed. Reg. 22,372 (Dep't Commerce Apr. 1, 2024) .................................................................................................................... 1

Consol. Court No. 24-00070 Public Version

**RESPONSE OF
DONGKUK S&C CO., LTD. IN OPPOSITION TO PLAINTIFF'S
RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to the Court's November 14, 2024, Amended Scheduling Order, ECF No. 30, Dongkuk S&C Co., Ltd. (hereinafter, "DKSC"), defendant-intervenor in the above-captioned action, responds to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record. See ECF Nos. 24, 25 (Sept. 11, 2024) ("Pl. Br."). DKSC supplements and supports the arguments that Defendant made in its December 18, 2024, Response in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record. See Def.'s Resp. to Pl. Mot. For J. Upon Agency R. (Dec. 18, 2024), ECF No. 31 ("Def. Br.").

**I.   RULE 56.2 STATEMENT**

Plaintiff challenges the U.S. Department of Commerce's ("Commerce") final results in the 2021-2022 administrative review of the antidumping duty order on Utility Scale Wind Towers from the Republic of Korea, 89 Fed. Reg. 16,544 (Dep't Commerce Mar. 7, 2024), P.R. 96, as corrected in Utility Scale Wind Towers from the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2021-2022; Correction, 89 Fed. Reg. 22,372 (Dep't Commerce Apr. 1, 2024), P.R. 99, and accompanying Issues and Decision Memorandum ("Decision Memo"), P.R. 92. Plaintiff only presents one issue on appeal: whether Commerce's decision to not adjust DKSCs reported conversion costs is supported by substantial evidence. As explained below, Commerce's decision to use the actual reported conversion costs by DKSC was reasonable and supported by substantial evidence.

## II. STANDARD OF REVIEW

DKSC incorporates by reference the standard of review provided by Defendant, the United States. See Def. Br., at 7–8.

## III. ARGUMENT

DKSC incorporates by reference the arguments made by Defendant in its response brief. Specifically, DKSC agrees that Commerce: (1) correctly interpreted the normal value provision of 19 U.S.C. § 1677b(f)(1)(A); (2) correctly determined that DKSC's conversion costs were related to the physical characteristics of the subject merchandise; and (3) followed its practice when declining to adjust any differences in conversion costs. To prevent redundancy of arguments, DKSC supplements Defendant's briefing to address additional critical facts on the record that Plaintiff failed to acknowledge in its Rule 56.2 Memorandum.

### A. PLAINTIFF FAILS TO PROVIDE ANY LEGAL OR FACTUAL BASIS WHY COMMERCE'S DETERMINATION NOT TO ADJUST DKSC'S CONVERSION COSTS SHOULD BE REMANDED

Plaintiff argues that Commerce erred in not adjusting DKSC's reported conversion costs because such costs did "not reasonably reflect the costs associated with the production and sale of merchandise," under 19 U.S.C. § 1677b(f)(1)(A). Pl. Br., at 1. However, DKSC's cost allocation methodology clearly demonstrates that Commerce's decision to rely upon DKSC's actual reported conversion costs—which comprised only **[     ]** percent of its total cost of manufacturing—was in accordance with 19 U.S.C. § 1677b(f)(1)(A) and supported by substantial evidence. See DKSC's Sections, B, C, and D Questionnaire Responses (Jan. 3, 2023), at D-13 ("Initial BCD Resp."), P.R. 38, C.R. 15–16.

### 1. DKSC's Cost Allocation Methodology Was Reasonable Given Substantial Evidence on the Record

Since the original investigation of the underlying proceeding, DKSC has reported its costs of manufacturing on a project-specific basis, which Commerce has reviewed and consistently accepted.  See <u>Utility Scale Wind Towers from the Republic of Korea:  Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances</u>, 85 Fed. Reg. 40,243 (Dep't Commerce July 6, 2020), and accompanying Issues and Decision Memorandum (June 29, 2020), at cmt.7; <u>see</u> <u>also</u> <u>Utility Scale Wind Towers from the Republic of Korea:  Final Results of Antidumping Duty Administrative Review; 2020-2021</u>, 88 Fed. Reg. 13,428 (Dep't Commerce Mar. 3, 2023), and accompanying Issues and Decision Memorandum (Feb. 27, 2023), at cmt. 3.

Given that wind towers are produced through unique, customer-designed projects, DKSC's cost accounting system tracks all activities on a project-specific basis.  <u>See</u> Letter from DKSC, "Notification of Cost Reporting Issue" (Nov. 17, 2022), P.R. 23.  In other words, raw material and other material costs incurred are directly traceable to individual projects because DKSC procures materials according to its customers' requirements once it confirms the specifications of the wind tower project.  <u>Id.</u>  Such materials are referred to as "direct costs." Direct material costs, as well as the direct portion of variable overhead costs linked to specific projects, comprised approximately **[   ]** percent of DKSC's total cost of manufacturing ("TOTCOM").  <u>See</u> Initial BCD Resp., at D-13.

With regard to DKSC's reporting methodology for conversion costs, DKSC presented the following detailed information in its questionnaire response to Commerce:

> Conversion costs—i.e., direct labor, indirect variable overhead, and fixed overhead—are allocated by dividing the amount of work performed (production

> quantity). The "VOH" field consists of direct VOH and indirect VOH. Direct VOH is directly traceable and assigned to the specific projects.
>
> In contrast, indirect VOH is comprised of common costs that are not directly related to certain projects and, thus, are allocated to projects on a monthly basis. That is, unlike direct costs such as raw materials, indirect costs (including scrap offsets) are akin to fixed costs that are not impacted by differences in product characteristics. In the normal course of accounting, the same unit price per ton is applied to all projects regardless of the circumstances. DKSC normally calculates indirect costs each month based on the monthly production quantity as verified in the original investigation. Consequently, projects produced in high-production quantity months typically have lower indirect costs because the costs are allocated over a greater denominator; whereas projects produced in lower-production quantity months typically have higher indirect costs because of the smaller denominator.

DKSC's Supplemental Section D Questionnaire Response (June 8, 2023) ("Supp. D Resp."), at pp. SD-25 to SD-26, P.R. 60, C.R. 37–39.

As further support, DKSC also provided detailed record evidence that included: (1) a comparison table and sample calculations illustrating how the unit conversion costs change for the same project from month to month, depending on the monthly production quantity; (2) sample calculations of the labor and depreciation costs for one CONNUM sold in the home market and one CONNUM sold in the U.S. market, which were allocated based on the monthly production quantities; (3) support for how DKSC segregated the combined VOH in the per-piece cost database between direct VOH (NET_VOH1_PC) versus indirect VOH (NET_VOH2_PC) for all CONNUMs; and (4) weighted-average unit indirect costs and the ratio of such indirect costs to the TOTCOM. Id., at Exhibits SD-23 to SD-27.

Moreover, for purposes of this underlying proceeding, Commerce has designated the following eleven physical characteristics that it uses for purposes of constructing each unique matching "control number" that forms the basis for how it performs the AD duty calculations:

| Physical Characteristic | Description |
|---|---|
| 1. Type | Whether the product is a complete tower or section |
| 2. Weight | Weight of tower/section |
| 3. Height | Height of tower/section |
| 4. Tower Sections | Number of tower sections for the particular sale |
| 5. Type of Paint | The top paint coat for the tower/section |
| 6. Metalizing | The degree of metalizing of the tower/section |
| 7. Elec.-Bus Bars | Whether the tower/section contains bus bars |
| 8. Elec.-Power | Whether the tower/section contains power cables |
| 9. Lift | Whether an elevator is attached to the tower |
| 10. Platform | The number of platforms in the tower/section |
| 11. Internal Components | Whether there were other internal components |

Letter from Commerce to DKSC, "Request for Information," at B-9 to B-14 (Nov. 4, 2022), P.R. 19. Because wind towers are all unique, customer designed projects, each tower can vary significantly in weight, height, or type of product. Accordingly, the first three CONNUM characteristics carry the most significance. Commerce reasonably was aware of and considered this record evidence in reaching its determination with regard to conversion costs, as discussed further in the next section.

      **2.    DKSC's Conversion Costs Reasonably Reflect Costs Associated with the Production of Wind Towers**

Plaintiff wrongly contends that Commerce should have adjusted DKSC's reported conversion costs—i.e., direct labor and indirect costs—because they are not attributable to differences in physical characteristics of the finished wind towers. See Pl. Br., at 4. By asserting that direct labor and indirect costs are not related to differences in the physical characteristics of the finished merchandise, Plaintiff misconstrues Commerce's practice on adjusting costs and fails to consider basic concepts of manufacturing and accounting. Moreover, Plaintiff's allegation of a "distortion" inherent in DKSC's reported conversion costs is based on an isolated, self-serving analysis that has no probative value because it fails to consider all eleven enumerated CONNUM characteristics.

5

Under 19 U.S.C. § 1677b(f)(1)(A), costs shall normally be calculated based on the records of the exporter or producer of the merchandise, if such records are: (1) kept in accordance with the generally accepted accounting principles of the exporting country; and (2) reasonably reflect the costs associated with the production of and sale of the merchandise. DKSC's cost reporting satisfied both requirements. The conversion costs that DKSC reported—specifically direct labor, indirect variable overhead, and fixed overhead—inherently related to the production of merchandise and were attributable to the finished product's physical characteristics. Wind towers, or any product for that matter, cannot be produced in a vacuum. Every manufacturer incurs costs related to labor and overhead. Labor costs must be incurred to produce each wind tower section; electricity bills and rent, among many others, must be paid to ensure flange assembly, welding, bending, cutting, and inspection can occur. To argue that such costs are not related to the "production" of the merchandise is baseless and absurd.

Indeed, if 19 U.S.C. § 1677b(f)(1)(A) is to be read and applied in the manner that Plaintiff proposes, then Commerce could arguably adjust any producer's conversion costs, which would render a producer's actual books and records irrelevant. This would further result in far more distortive margin results. Commerce reasonably refrained from doing so here.

Not only is DKSC's allocation methodology reasonable, but importantly, Commerce has consistently accepted and used this methodology in prior practice. DKSC used actual manufacturing costs from its accounting system to calculate conversion ratios and applied such ratios over monthly production quantities. See Supp. D Resp., at pp. SD-25 to SD-26. DKSC's reported conversion costs are directly related to the differences in the merchandise's physical characteristics because DKSC's allocated such costs on a monthly project-specific production quantity (weight) basis. Id., at Exhibits SD-23 to SD-26. Production quantity is the most

reasonable basis for allocating conversion costs because, based on the specific physical characteristics of the finished wind tower, projects with more sections—and therefore reflecting a greater quantity (weight) produced—may absorb more conversion costs. This allocation, therefore, reflects the costs to produce merchandise because it can be tied to finished goods production quantities. Id., at p. SD-26.

Plaintiff's comparison of conversions costs, used to buttress its assertion that conversion costs cannot be tied to differences in physical characteristics, critically fails to consider the different physical characteristics of finished wind towers. See Letter from the Wind Tower Trade Coalition, "Pre-Preliminary Comments on Dongkuk's Questionnaire Responses" (July 20, 2023), at Exhibit 1, P.R. 62, C.R. 45. Plaintiff's analysis compares conversions costs only to the number of sections for each tower, which is just one CONNUM characteristic out of the eleven enumerated physical characteristics upon which Commerce bases its AD duty calculations. In other words, Plaintiff does not consider the widely varying height or weight characteristics of each tower, which are the two most significant physical characteristics of a wind tower. Yet, Plaintiff's cherry-picked analysis even reveals that SEQU [ ] concerns the [ ] tower at [ ] meters high which, in fact, was the tower produced during the review period with the [ ] conversion costs. Id. Intuitively, the [ ] tower would require [ ] processing costs. Conversely, towers with only [ ] generally had lower processing costs. Id. In considering the other physical characteristics, there is no alleged variance or distortion in DKSC's processing costs. Substantial evidence therefore supports Commerce's decision to rely on DKSC's reasonable conversion cost reporting methodology.

Finally, Plaintiff wrongly asserts that Commerce deviated from its standard practice in the underlying determination. See Pl. Br., at 5–6. The cases upon which the Plaintiff relied

7

primarily involve the reallocation of direct material costs when cost variances are unrelated to the physical characteristics of the product. Id., at 6–7. Instead, Commerce's prior practice actually supports its decision to rely on a reasonable methodology for allocating indirect costs and direct labor.

For example, in Carbon and Alloy Steel Threaded Rod from India, Commerce determined to use production quantity as the basis for allocating direct labor costs in addition to finding that an allocation of variable overhead costs based on production quantity was appropriate. See Carbon and Alloy Steel Threaded Rod from India: Final Results of Antidumping Duty Administrative Review, 2021-2022: 88 Fed. Reg. 75,265 (Dep't Commerce Nov. 2, 2023) and accompanying Issues and Decision Memorandum (Oct. 26, 2023), at cmts. 2 and 3. Likewise, in Certain Steel Nails from Malaysia, Commerce relied upon a quantity-based allocation methodology for indirect costs. See Certain Steel Nails from Malaysia: Final Determination of Sales at Less Than Fair Value, 80 Fed. Reg. 28,969 (Dep't Commerce May 20, 2015), and accompanying Issues and Decision Memorandum (May 13, 2015), at cmt. 3 ("allocation by its very nature involves reasonable estimates and assumptions to approximate indirect costs associated with a particular product."). Finally, in Dioctyl Terephthalate from the Republic of Korea, Commerce correctly declined to adjust a respondent's conversion costs after finding that such costs were based on the respondent's normal books and records. See Dioctyl Terephthalate from the Republic of Korea: Final Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances, 82 Fed. Reg. 28,824 (Dep't Commerce June 26, 2017), and accompanying Issues and Decision Memorandum (June 19, 2017), at cmt. 11.

In sum, Plaintiff has presented no factual or legal basis for why Commerce must deviate from its well-reasoned past practice in this proceeding. Commerce reasonably considered the substantial evidence on the record for this complex cost reporting issue and correctly determined to rely on DKSC's reasonable, accurate, and non-distortive conversion cost allocation methodology.[1]

## IV. CONCLUSION

DKSC respectfully submits that the Court should affirm Commerce's determination with respect to the challenges raised in Plaintiff's Rule 56.2 Memorandum.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Jarrod M. Goldfeder
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C. 20003
(202) 223-3760

Dated: January 15, 2025

*Dongkuk S&C Co., Ltd.*
*Defendant-Intervenor*

---

[1] The U.S. Court of Appeals for the Federal Circuit has recognized that Commerce is entitled to deference in administering the antidumping law. See, e.g., Fujitsu Gen. v. United States, 88 F.3d 1034, 1039 (Fed. Cir. 1996) (citing Smith-Corona Grp. v. United States, 713 F.2d 1568, 1571, 1582 (Fed. Cir. 1983)). This deference stems from the recognition that the "{a}ntidumping . . . duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts." Id. (citing United States v. Zenith Radio Corp., 64 CCPA 130, 139, 562 F.2d 1209, 1216 (1977), aff'd, 437 U.S. 443 (1978)).

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WIND TOWER TRADE COALITION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> DONGKUK S&C CO. LTD. ) <br> ) <br> Defendant-Intervenor. ) <br> ) | Before: Hon. Leo M. Gordon, Judge <br><br> Court No. 24-00070 |

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that the accompanying Response of Dongkuk S&C Co., Ltd. ("DKSC") in Opposition to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, dated January 15, 2025, complies with the word-count limitation described in the Court's Amended Scheduling Order.  See ECF No. 30.  This response brief contains 2,452 words according to the word-count function of the word-processing software used to prepare the brief, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Jarrod M. Goldfeder
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  January 15, 2025

*Counsel to Dongkuk S&C Co., Ltd.*
*Defendant-Intervenor*