A-580-902
Remand: Slip Op. 25-148
POR: 8/01/2021 - 7/31/2022
**PUBLIC VERSION**
E&C/OIX: IR

***Wind Tower Trade Coalition v. United States***
**Court No. 24-00070, Slip Op. 25-148 (CIT December 2, 2025)**
**Utility Scale Wind Towers from the Republic of Korea**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) prepared these results of
redetermination pursuant to the opinion and remand order of the U.S. Court of International
Trade (the Court), in *Wind Tower Trade Coalition v. United States*.[1]  This action arises out of the
final results in the 2021-2022 administrative review of the antidumping duty (AD) order on
utility scale wind towers (wind towers) from the Republic of Korea (Korea).[2]

The Court remanded Commerce to further explain and, if appropriate, reconsider its
treatment of Dongkuk S&C Co., Ltd.'s (Dongkuk's) conversion costs.[3]  Pursuant to the Court's
*Remand Order*, Commerce has reconsidered its decision to accept Dongkuk's reported
conversion costs.  As a result, we recalculated Dongkuk's indirect conversion costs as discussed
below, resulting in a weighted-average dumping margin for Dongkuk of 1.90 percent.

---

[1] *See Wind Tower Trade Coalition v. United States*, Consol. Court No. 24-00070, Slip Op. 25-148 (CIT December 2,
2025) (*Remand Order*).
[2] *See Utility Scale Wind Towers from the Republic of Korea: Final Results of Antidumping Duty Administrative
Review; 2021-2022*, 89 FR 16544 (March 7, 2024) (*Final Results*), and accompanying Issues and Decision
Memorandum (IDM); *see also Utility Scale Wind Towers from the Republic of Korea: Final Results of Antidumping
Duty Administrative Review; 2021-2022; Correction,* 89 FR 22372 (April 1, 2024).
[3] *See Remand Order* at 14.

## II.    BACKGROUND

Commerce published the *Final Results* on March 7, 2024,[4] in which Commerce accepted Dongkuk's reported conversion costs and used them in the calculation of Dongkuk's margin.[5] The Wind Tower Trade Coalition (the petitioner) challenged the *Final Results* regarding whether Commerce's acceptance of Dongkuk's conversion costs was appropriate.

In its opinion sustaining, in part, and remanding, in part, the Court concluded that Commerce failed to explain why Dongkuk's conversion costs were appropriate.[6]  Specifically, while the Court also sustained Commerce's explanation that the facts of the underlying administrative review were distinct from those of another case,[7] the Court held that Commerce failed to adequately:  (1) address the petitioner's argument that Dongkuk's reported conversion costs were unreasonable because they did not reflect, under Commerce's practice, one of the more important product characteristics (tower sections) or the second and third characteristics (weight and height);[8] and  (2) explain why the complexities of the less important product characteristics used in Commerce's analysis in the *Final Results* are "appropriately reflected in Dongkuk's reported conversion costs."[9]

On January 21, 2026, we released our Draft Remand to interested parties.[10]  On January 29, 2026, we received comments from the petitioners and Dongkuk.[11]  We respond to these

---

[4] *See Final Results*, 89 FR at 16544.
[5] *See Final Results* IDM at Comment 3.  Dongkuk's conversion costs consist of:  (1) direct conversion costs (*i.e.*, direct variable overhead) and (2) indirect conversion costs (*i.e.*, direct labor, indirect variable overhead, and fixed overhead).  *See* Dongkuk's Letter, "DKSC's Supplemental Section D Questionnaire Response," dated June 8, 2023 (Dongkuk's SDQR), at SD-25 to SD-27.
[6] *See Remand Order* at 12-14.
[7] *Id*. at 7-11.
[8] *Id*. at 13.  We note that "tower sections" is the fourth product characteristic, following weight and height.
[9] *Id*. at 13-14.
[10] *See* Draft Results of Redetermination Pursuant to Court Remand, *Wind Tower Trade Coalition v. United States*, Slip Op. 25-148 (CIT December 2, 2025), dated January 21, 2026 (Draft Remand).
[11] *See* Petitioner's Letter, "Comments on Draft Results of Redetermination," dated January 29, 2026 (Petitioner's Comments); *see also* Dongkuk's Letter, "Comments on Draft Remand Results," dated January 29, 2026 (Dongkuk's Comments).

comments below.  After considering the comments raised by interested parties, we made no changes to the Draft Remand.  As a result, the final weighted-average dumping margin for Dongkuk is 1.90 percent.[12]

## III.    ANALYSIS

### I.    Dongkuk's Indirect Conversion Costs

In light of the Court's *Remand Order*, after reviewing the record evidence, we reconsidered our treatment of Dongkuk's indirect conversion costs.[13]  Specifically for these final results of redetermination, we calculated a weighted average of Dongkuk's reported indirect conversion costs (*i.e.*, direct labor, indirect variable overhead, and fixed overhead), so that each control number (CONNUM) has an identical annual average per-unit indirect conversion cost on a weight basis; we then calculated a CONNUM-specific percentage adjustment between the reported and annual average per-unit conversion costs, which we applied to our calculations based on per-piece basis.

According to Dongkuk, it allocates its indirect conversion costs, which are generally "fixed", by production quantity (in metric tons (MT)) in its normal books and records.[14] Therefore, Dongkuk states that "{i}n the normal course of accounting, the same unit price per ton is applied to all projects regardless of the circumstances."[15]  Dongkuk reported that it conducts this allocation each month based on monthly production quantities; therefore, projects produced in months with higher production volume have lower indirect conversion costs, while

---

[12] *See* Memorandum, "2021 – 2022 Antidumping Duty Administrative Review of Utility Scale Wind Towers from the Republic of Korea:  Calculation Memorandum for the Draft Results of Redetermination," dated January 21, 2026 (Draft Calculations).

[13] We have made no adjustments to Dongkuk's reported direct conversion cost because we find that they are reasonable, as described in further detail *infra*.

[14] *See* Dongkuk's SDQR at SD-25 to SD-26.

[15] *Id*.

projects produced in months with lower production volume have higher indirect conversion costs.[16]

Dongkuk states that with regard to indirect conversion costs, the "same unit price per ton is applied to all projects;" however, our review of Dongkuk's recorded cost data demonstrates this is not so.[17]  Dongkuk reported the three elements of indirect conversion costs as follows:  (1) direct labor between [     ] Korean won (KRW) per MT and [     ] KRW per MT; (2) indirect variable overhead between [     ] KRW per MT and [     ] KRW per MT; and (3) fixed overhead between [     ] KRW per MT and [     ] KRW per MT.[18]  Therefore, Dongkuk reported indirect conversion costs that vary greatly in spite of its claim that the "same unit price per ton" is applied to all projects.  The differences in the reported indirect conversion costs also appear to be unrelated to the product characteristics, as there is no discernable increase in these costs when the reported CONNUMs increase in complexity.[19]  Therefore, it appears that differences in the reported indirect conversion costs arise as a result of the allocation methodology that Dongkuk uses in its normal books and records, *i.e.,* because Dongkuk allocates these costs on a monthly basis where there may be variation in production quantities between months.

Commerce's normal practice is to rely on POR- annual average costs to calculate a respondent's cost of production (COP).[20]  As described in *Stainless Steel Bar from the UK*:

> {Commerce}'s normal practice is to use {(period of review)} POR annual average costs to calculate the COP and constructed value (CV).  We use annual average costs in order to minimize fluctuations in the production cost experienced by the respondent over short periods of time, where these fluctuations do not reflect

---

[16] *Id*. at SD-25 to SD-26.
[17] *Id*. at SD-25.
[18] *See* Draft Calculations at Attachment 3.
[19] *Id*.
[20] *See*, *e.g.*, *Stainless Steel Sheet and Strip in Coils from Mexico; Final Results of Antidumping Duty Administrative Review*, 74 FR 6365 (February 9, 2009) (*Stainless Steel Sheet and Strip from Mexico*), and accompanying IDM at Comment 7.

differences in the physical characteristics of the products. By applying this methodology, we reduce the effect of fluctuating raw material costs, erratic production levels, major repairs and maintenance, inefficient production runs, and seasonality."[21]

As described above, based on our review of record evidence, Dongkuk's indirect conversion costs demonstrate the problems inherent with using cost averaging periods that are shorter than annual POR averages, because Dongkuk's per-unit indirect conversion costs vary greatly given Dongkuk's "erratic production levels."[22] Therefore, as Commerce has found in other cases given similar circumstances,[23] we find that calculating a POR annual average of Dongkuk's indirect conversion costs would reduce the impact of month-to-month fluctuations that are not reflective of either the actual costs to produce the merchandise under consideration or the product characteristics.

While we recognize that Dongkuk reported its costs based on its normal books and records, in which Dongkuk allocates indirect conversion costs on a monthly basis, Dongkuk's indirect conversion costs do not reasonably reflect the cost associated with producing the merchandise under consideration due to the fluctuations in reported costs between CONNUMs. Because we find that Dongkuk's methodology is distortive and not reflective of the actual cost of producing the merchandise under consideration, we find it appropriate to deviate from

---

[21] See Stainless Steel Bar from the United Kingdom: Final Results of Antidumping Duty Administrative Review, 72 FR 43598 (August 6, 2007) (Stainless Steel Bar from the UK), and accompanying IDM at Comment 1 (citing Certain Steel Concrete Reinforcing Bars from Turkey; Final Results, Rescission of Antidumping Duty Administrative Review in Part, and Determination To Revoke in Part, 70 FR 67665 (November 8, 2005), and accompanying IDM at Comment 1; Color Television Receivers from the Republic of Korea; Final Results of Antidumping Duty Administrative Review, 55 FR 26225, 26228 (June 27, 1990); and Grey Portland Cement and Clinker from Mexico: Final Results of Antidumping Duty Administrative Review, 58 FR 47253, 47256 (September 8, 1993)).

[22] Id.; see also Dongkuk's SDQR at SD-26 ("Consequently, projects produced in high-production quantity months typically have lower indirect costs because the costs are allocated over a greater denominator; whereas projects produced in lower-production quantity months typically have higher indirect costs because of the smaller denominator.").

[23] See, e.g., Stainless Steel Sheet and Strip from Mexico IDM at Comment 7 ("it is the {Commerce}'s experience that over an extended period of time, these factors tend to smooth out, resulting in an average cost that reasonably reflects the cost of production for sales made throughout the year.").

Dongkuk's reported COP, consistent with section 773(f)(1)(A) of the Tariff Act of 1930, as amended (the Act). Thus, we recalculated Dongkuk's indirect conversion costs as POR annual averages of its reported direct labor, indirect variable overhead, and fixed overhead costs. Specifically, we calculated a weighted average of Dongkuk's reported POR-wide direct labor, indirect variable overhead, and fixed overhead costs using POR-wide production quantities (MT).[24] We then calculated the difference between the revised per-MT POR weighted-average indirect conversion costs and Dongkuk's reported CONNUM-specific costs, as a percentage of the per-MT reported costs for each CONNUM. We applied this percentage to the reported CONNUM-specific indirect conversion costs on a per-piece basis (the weight basis used in our calculations), to calculate the revised indirect conversion costs on a per-piece basis.[25]

In the *Remand Order*, the Court held that we did not adequately address how three product characteristics (*i.e.*, weight, height, and tower sections) were reflected in Dongkuk's reported conversion costs.[26] As an initial matter, we find that Dongkuk's direct materials costs, specifically its steel plate costs, correspond to most of the physical differences in these product characteristics. The weight and height product characteristics are based on the wind tower's dimensions; by extension, most of the costs related to the differences in those product characteristics correspond to the amount of steel plate used to produce a given wind tower. The direct materials costs, including steel plate, are a [                    ] proportion of the overall cost of manufacture than the conversion costs.[27] Therefore, the direct materials costs are the costs that most closely correspond to the differences in these physical characteristics, not the conversion costs.

---

[24] *See* Draft Calculations at 2 and Attachment 3.
[25] *Id*. at 2 and Attachments 1-3.
[26] *See Remand Order* at 12-14.
[27] *Id*. at Attachment 3.

6

Nonetheless, we find that revised indirect conversion costs calculated for these final results of redetermination more closely reflect the increasing complexity of these product characteristics.  When sorting by weight, the most important of the product characteristics mentioned in the *Remand Order*, the revised indirect conversion costs [

].[28]  When sorting by height, these revised indirect conversion costs also [                                                                                          ].[29]  Similarly, when sorting by the tower sections, the revised indirect conversion costs also [

].[30]  Therefore, we find that the revised indirect conversion costs are more reflective of the physical characteristics of the merchandise (*i.e.*, weight, height, and tower sections) such that there are no longer unexplained variations.  Consequently, we find that it is appropriate to rely on these revised indirect conversion costs in our calculation of Dongkuk's weight-average dumping margin for purposes of these final results of redetermination.

Finally, regarding the remaining portion of Dongkuk's conversion costs, Dongkuk's direct variable overhead, Dongkuk explained that, unlike its indirect conversion costs, direct variable overhead is "directly traceable and assigned to the specific projects."[31]  Therefore, because Dongkuk's direct variable overhead is directly tied to the individual projects during the POR, the issues described above with Dongkuk's monthly allocation methodology for indirect conversion costs are not present.  Further, we find that Dongkuk's reported direct variable overhead is reflective of the product characteristics.  When sorting Dongkuk's costs by direct variable

---

[28] *See* Draft Calculations at Attachment 3.
[29] *Id*.  For example, the revised indirect conversion costs for CONNUM [                          ] do not [                                   ]; however, we note that the product characteristic weight Dongkuk reported for this CONNUM is [                          ] than Dongkuk's other reported CONNUMs.
[30] *Id*.  *See, e.g.*, CONNUM [                          ].
[31] *See* Dongkuk's SDQR at SD-25.

overhead, as direct variable overhead increases [

].[32]  Further,

CONNUMs that are [

] because, as direct variable overhead increases, [

]

increases.[33]  As a result, we find that Dongkuk's reported direct variable overhead "reasonably reflects" the cost of producing the merchandise under consideration when considering the varying complexity of the CONNUMs reported in Dongkuk's COP database.  Therefore, we made no adjustment to Dongkuk's reported direct variable overhead, consistent with section 773(f)(1)(A) of the Act.

## IV.    INTERESTED PARTY COMMENTS

On January 21, 2026, Commerce issued its Draft Remand and provided interested parties an opportunity to comment.[34]  Commerce received comments from the petitioner and Dongkuk.[35] The petitioner's and Dongkuk's comments are addressed below.  After considering these comments, we have made no changes to our analysis for these final results of redetermination.

**Comment 1:  Dongkuk's Indirect Conversion Costs**

The petitioner did not provide the requested executive summary regarding this argument. The petitioner's arguments may be found in Petitioner's Comments at page 2.

The following is a verbatim executive summary of argument submitted by Dongkuk.  For further details, *see* Dongkuk's Comments at 3-6.

---

[32] *See* Draft Calculations at Attachment 3.
[33] *Id*.
[34] *See* Draft Remand.
[35] *See* Petitioner's Comments; *see also* Dongkuk's Comments.

For the reasons that {Dongkuk} has explained previously to {Commerce} and to the {Court}, because {Dongkuk}'s conversion costs reasonably reflected costs associated with the production of wind towers, {Commerce} should provide further explanation that no smoothing adjustment to {Dongkuk}'s reported indirect conversion costs is warranted when responding to the {Court}'s *Remand Order*. {Dongkuk}'s cost reporting methodology was reasonable, and substantial record evidence demonstrated that the conversion costs that {Dongkuk} reported— specifically direct labor, indirect variable overhead, and fixed overhead— inherently related to the production of merchandise and were attributable to the finished product's physical characteristics.

But to the extent that {Commerce} decides to make a smoothing adjustment to {Dongkuk}'s conversion costs to comply with the {Court}'s *Remand Order*, then {Dongkuk} agrees with {Commerce}'s decision to reject the proposed methodology that the petitioner advocated during the course of the underlying administrative review. In particular, the petitioner proposed that {Commerce} multiply single-average, per-unit conversion costs for all models that {Dongkuk} sold by the total number of sections, thus resulting in extended costs rather than per-unit costs. But the petitioner's approach failed to restate those costs onto a per-unit basis as is necessary for any antidumping duty calculation. {Commerce}'s methodology in the Draft Remand Results, by contrast, is more sensible because {Commerce} redistributes the costs according to weight, resulting in truer smoothed indirect conversion costs stated on a per-unit basis.

**Commerce's Position:** As described above, we continue to recalculate Dongkuk's indirect conversion costs consistent with the Draft Remand and in accordance with section 773(f)(1)(A) of the Act.

Dongkuk essentially reiterates its explanation from its supplemental questionnaire response regarding its direct conversion costs.[36] As explained above, we disagree with Dongkuk that its reported indirect conversion costs reasonably reflect the cost of producing wind towers and that no adjustment is warranted.[37] Rather, in the Draft Remand, we relied on Dongkuk's

---

[36] *See* Dongkuk's Comment at 4-5 (citing Dongkuk's SDQR at SD-25 to SD-26).

[37] *Id*. at 5. We note that there is a difference between the adjustment made to Dongkuk's indirect conversion costs and "smoothing." A smoothing adjustment implies that every CONNUM with identical characteristics has the same indirect conversion cost. However, as described above, we adjusted Dongkuk's reported CONNUM-specific, per-piece indirect conversion costs by reallocating Dongkuk's POR indirect conversion costs to be based on the annual production quantity in metric tons instead of monthly production quantities. As a result, the per-piece indirect conversion costs are not "smoothed," but rather adjusted to better reflect the physical differences between CONNUMs and mitigate the impact of allocating fixed costs by monthly production quantities when production fluctuates over time.

supplemental questionnaire response to find that its reported indirect conversion costs were not consistent with Commerce's standard practice of annual average costs.[38]  Dongkuk did not address in its comments the issue of annual average costs, the basis for our decision to recalculate its indirect conversion costs.[39]  Therefore, given that Dongkuk did not address our rationale for deviating from its reported costs, we find that Dongkuk has provided no basis to deviate from our approach in the Draft Remand.

Dongkuk argues that its reporting is consistent with prior segments of this proceeding and that the indirect conversion costs reasonably reflect the cost of producing the merchandise under consideration.[40]  Our acceptance of Dongkuk's reporting methodology in a prior segment of this proceeding does not bind our determination here.[41]  Further, Dongkuk claims its costs "reasonably reflected costs associated with the production of wind towers" but cites nothing to support its claim.[42]  As described in detail above, Dongkuk's reporting methodology for its indirect conversion costs is problematic because of the variations in its production volumes month to month, which result in [                    ] per-MT indirect conversion costs, even when Dongkuk allocates the same per-MT indirect conversion costs to all production in a given month.[43]  Dongkuk cites nothing to justify such [                ] in per-MT costs. Therefore, we continue to find that Dongkuk's indirect conversion costs do not reasonably reflect the cost to produce wind towers, because of the monthly allocation methodology used in Dongkuk's normal books and records.

---

[38] *See* Draft Remand at 3-5.
[39] *See*, generally, Dongkuk's Comments.
[40] *See* Dongkuk's Comments at 3-4.
[41] *See*, *e.g.*, *Ancientree Cabinet Co. v. United States*, 532 F.Supp.3d 1241, 1260 (CIT 2021) ("Commerce's prior determinations are not legally binding, its exercise of discretion is constrained by the need to provide an adequate explanation for any deviation").
[42] *See* Dongkuk's Comments at 5.
[43] *See* Dongkuk's SDQR at SD-25 to SD-26; *see also* Draft Calculations at Attachment 3.

Dongkuk relies on circular reasoning to support its argument that we should rely on its reported indirect conversion costs, explaining that it "used actual manufacturing costs from its accounting system to calculate conversion ratios and applied such ratios over monthly production quantities."[44]  While under section 773(f)(1)(A) of the Act, Commerce normally calculates costs based on the respondent's books and records, Commerce may deviate from the normal books and records if they are either not kept in accordance with generally accepted accounting principles in the respondent's country or if the costs contained in the books and records do not "reasonably reflect the costs associated with the production and sale of the merchandise."  As described above, because of the [                    ] in per-MT indirect conversion costs without regard to the physical characteristics, due to Dongkuk's monthly allocation methodology, we find that Dongkuk's indirect conversion costs as recorded in its books and records do not reasonably reflect the cost of producing wind towers.  Dongkuk neither challenges this finding directly in its comments, nor cites any record evidence to dispute it.  The fact that Dongkuk provided support in its questionnaire responses for the allocation methodology used in its books and records is immaterial,[45] because we find that those unit costs do not reasonably reflect the cost of production for the merchandise under consideration.  Therefore, we continue to find that Dongkuk's indirect conversion costs deviate from Commerce's preference of using annual POR average costs and do not reasonably reflect the cost of producing wind towers.  As a result, we have recalculated Dongkuk's indirect conversion costs using the methodology described above, in accordance with section 773(f)(1)(A) of the Act.[46]

---

[44] *See* Dongkuk's Comments at 5.
[45] *Id*. at 5 (citing Dongkuk's SDQR at Exhibits SD-23 to SD-27).
[46] Dongkuk in its comments also addresses the petitioner's proposed methodology for adjusting its conversion costs in the underlying administrative review.  *Id*. at 5-6.  Because we did not employ this methodology in the Draft Remand, nor did the petitioner request that we use this methodology for these final results of redetermination (*see* Petitioner's Comments at 3), we find that this portion of Dongkuk's argument is moot.

**Comment 2:  Dongkuk's Direct Conversion Costs**

The petitioner did not provide the requested executive summary regarding this argument. The petitioner's arguments may be found in Petitioner's Comments at pages 1-5.

**Commerce's Position:**  We disagree that Dongkuk's reported direct conversion costs (*i.e.*, direct variable overhead (direct VOH)) should be adjusted; therefore, we have not adjusted Dongkuk's reported direct conversion costs for these final results of redetermination.

As an initial matter, we disagree with the petitioner that we offered an "unquestioning acceptance" of Dongkuk's reported direct VOH in the Draft Remand.[47]  We evaluated whether Dongkuk's direct VOH:  (1) suffered from the same distortive allocation methodology as its indirect conversion costs; and (2) was not reasonably reflective of the product characteristics.[48] As described above, because we found that neither circumstance was applicable, we continued to rely on Dongkuk's reported direct VOH.

First, we disagree with the petitioner that we treated Dongkuk's direct VOH "as axiomatic" because it is recorded on a project-specific basis.[49]  In the Draft Remand, we discussed how Dongkuk recorded its direct VOH on a project-specific basis to distinguish the direct VOH booked in Dongkuk's normal books and records from its indirect conversion costs, which Dongkuk is unable to tie to a specific project and allocates on the basis of monthly production quantities in its normal books and records.[50]  As described above, we found that for indirect conversion costs, Dongkuk's monthly allocation methodology is distortive because of the variation in  the POR monthly production levels, and nothing on the record, including the

---

[47] *See* Petitioner's Comments at 3.
[48] *See* Draft Remand at 7-8.
[49] *See* Petitioner's Comments at 3.
[50] *See* Dongkuk's SDQR at SD-25 to SD-26.

physical characteristics, explains the [                    ] in per-MT indirect conversion costs.[51]
However, because Dongkuk does not record its direct VOH in the same manner as the indirect
conversion costs, but instead records direct VOH on a project-specific basis, these costs were
reported on a POR weighted-average basis for each project.[52]  Therefore, the basis we used to
make an adjustment to Dongkuk's indirect conversion costs is not present with its direct VOH.

However, contrary to the petitioner's claim, we did not simply accept Dongkuk's
reported direct VOH.  We recognize that, in other instances, including with Dongkuk's reported
steel plate costs, we have deviated from a respondent's reported costs (even when they are
calculated on a POR-annual average basis) for reasons including, *inter alia*, costs that are not
reflective of the physical characteristics.[53]  However, while the petitioner contends that
Dongkuk's reported direct VOH is not reflective of the physical characteristics, which we
address further in detail below, the petitioner provides no basis for this alleged mismatch.[54]  In
making adjustments to a respondent's reported costs under section 773(f)(1)(A) of the Act, we
must find that a respondent's books and records do not "reasonably reflect the costs" of
producing the merchandise under consideration.  As a result, when making such adjustments, we
typically find both that:  (1) the respondent's costs as reported are not reflective of the physical
characteristics; and (2) the distortion is caused by production timing, shorter cost averaging
periods, *etc.*.[55]  We disagree that the record supports either point here.

---

[51] *See* Draft Remand at 3-5.
[52] *See*, *e.g.*, *Stainless Steel Bar from the UK* IDM at Comment 1.
[53] *See Final Results* IDM at Comment 1 ("Based on this analysis, Commerce determined that the record evidence
demonstrated that the timing of the purchases was the significant factor driving the resulting steel plate cost
differences between products, rather than the finished wind tower's weight and/or height.").
[54] *See*, generally, Petitioner's Comments.
[55] *See*, *e.g.*, *Final Results* IDM at Comment 1 (Explaining that smoothing Dongkuk's reported steel plate costs was
appropriate because the reported costs did not reasonably reflect the product characteristics because "the timing of
the purchases was the significant factor driving the resulting steel plate cost differences between products.").

Next, the petitioner claims that our acceptance of Dongkuk's direct VOH is unreasonable given our recalculation of Dongkuk's indirect conversion costs. As described above, the facts on the record distinguish Dongkuk's reporting of direct VOH from its reporting of indirect conversion costs.[56] Therefore, our determination to adjust Dongkuk's indirect conversion costs does not lead us to make a similar adjustment to Dongkuk's direct VOH, given the distinct way in which these costs are both recorded in Dongkuk's books and records and reported in Dongkuk's COP database.

Finally, the petitioner points to specific CONNUMs, arguing that Commerce's conclusion that those that are "[                    ]" have "[                              ]" is unreasonable.[57]  In making this argument, the petitioner relies on comparisons of specific CONNUMs (*e.g.*, [          ]).[58] We disagree that such a granular comparison is useful in determining whether Dongkuk's reported costs "reasonably reflect" the cost of producing wind towers.[59]  We note that a singular example is prone to cherry picking and one instance of a reported cost that does not reflect the complexity of the product characteristics does not invalidate a wider set of cost data where the differences in complexity are reflected in the aggregate.[60]  Accordingly, in the Draft Remand, we

---

[56] The petitioner also claims that Dongkuk "made false representations" regarding its indirect conversion costs.  *See* Petitioner's Comments at 3.  We note that while we find that Dongkuk's reported indirect conversion costs are not consistent in that the same per-unit cost is not applied to each CONNUM on a POR-basis because of the monthly variations in production quantity, we disagree that Dongkuk made a false representation given that the supporting documentation Dongkuk provided demonstrates than, in any given month, Dongkuk applied the same per-unit costs to any CONNUM/project that [                                        ].  *See* Dongkuk's SDQR at Exhibit SD-23.

[57] *See* Petitioner's Comments at 4 (citing Draft Remand at 7).

[58] *Id*.

[59] *See, e.g., Certain Steel Nails from the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 FR 20454 (May 14, 2025) (*Steel Nails from Korea*), and accompanying IDM at Comment 6 (where, in finding that a respondent's reported conversion costs were appropriate, we explained that "differences in per-unit conversion costs between CONNUMs can **generally** be attributed to the differences in {the physical characteristics}" (emphasis added) and that "{w}hile there are certain outliers, they are insignificant in relation to the totality of the reported production information.").

[60] *Id*.

considered Dongkuk's reported direct VOH for all CONNUMs reported in its COP database to determine whether the direct VOH corresponds to the complexity of the different CONNUMs. As described above, we found that Dongkuk's reported direct VOH corresponds to the complexity of the physical characteristics of the different CONNUMs, despite the existence of CONNUMs that do not reflect that relationship.

Regarding the petitioner's comparisons, we disagree with the petitioner and find that the record evidence shows that there is a relationship between the physical characteristics and the reported direct VOH of the CONNUMs at issue. First, with respect to the comparison between SEQ [        ], the petitioner argues that Dongkuk's reported direct VOH is unreasonable because SEQ [ ] is [                    ] than SEQ [ ] and has [

        ].[61] As described above, we find that the conversion costs, including direct VOH, need not correspond to the weight and height of a wind tower because the differences in those product characteristics are accounted for by the amount of steel plate consumed and the corresponding steel plate costs reported. However, assuming *arguendo*, that this comparison is appropriate, we note that SEQ [ ] is [                                    ] than SEQ [ ];[62] thus, the differences in the weight and height of these two CONNUMs [                    ]. Therefore, the differences in the two CONNUMs are [

        ].

---

[61] *See* Petitioner's Comments at 4.
[62] *See* Draft Calculations at Attachment 3.

**Table 1**

| SEQ | Weight (Net Tons) | Height (Meters) | Section (Count) | Paint Coating | Metalizing | Bus Bar |
|-----|-------------------|-----------------|-----------------|---------------|------------|---------|
| [ ] | [      ]          | [ ]             | [ ]             | [      ]      | [     ]    | [ ]     |
| [ ] | [      ]          | [ ]             | [ ]             | [      ]      | [     ]    | [ ]     |

| SEQ | Power Cable | Elevators | Platforms (Count) | Internals | Direct VOH |
|-----|-------------|-----------|-------------------|-----------|------------|
| [ ] | [ ]         | [ ]       | [ ]               | [ ]       | [     ]    |
| [ ] | [ ]         | [ ]       | [ ]               | [ ]       | [     ]    |

When we compare these CONNUMs to Dongkuk's other reported CONNUMs, we find that their reported direct VOHs are reasonable. Specifically, SEQ [      ] have reported direct VOHs of [      ] KRW per piece and [      ] KRW per piece, respectively.[63] SEQ [ ], which is between [                                      ] and has [                                                    ], has a reported direct VOH of [      ] KRW per piece, consistent with our finding that [                      ].[64]

**Table 2**

| SEQ | Weight (Net Tons) | Height (Meters) | Power Cable | Platforms (Count) | Internals | Direct VOH |
|-----|-------------------|-----------------|-------------|-------------------|-----------|------------|
| [ ] | [      ]          | [ ]             | [ ]         | [ ]               | [ ]       | [     ]    |

Further, SEQ [          ], all of which are [                      ] than SEQ [        ], have [                                        ] have [     ] reported direct VOH, ranging from [      ] KRW per piece to [      ] KRW per piece.[65]

**Table 3**

| SEQ | Weight (Net Tons) | Height (Meters) | Section (Count) | Paint Coating | Metalizing | Bus Bar |
|-----|-------------------|-----------------|-----------------|---------------|------------|---------|
| [ ] | [      ]          | [ ]             | [ ]             | [      ]      | [     ]    | [ ]     |
| [ ] | [      ]          | [ ]             | [ ]             | [      ]      | [     ]    | [ ]     |
| [ ] | [      ]          | [ ]             | [ ]             | [      ]      | [     ]    | [ ]     |

| SEQ | Power Cables | Elevators | Platforms (Count) | Internals | Direct VOH |
|-----|--------------|-----------|-------------------|-----------|------------|
| [ ] | [ ]          | [ ]       | [ ]               | [ ]       | [     ]    |
| [ ] | [ ]          | [ ]       | [ ]               | [ ]       | [     ]    |

---

[63] *Id.*
[64] *Id.*
[65] *Id.*

| [ ] | [ ] | [ ] | [ ] | [ ] | [    ] |
|-----|-----|-----|-----|-----|--------|

Similarly, while SEQ [ ] is [          ] than SEQ [          ], it has [

          ] and therefore is [                  ], and has a [        ]

reported direct VOH of [          ] KRW per piece.[66]  Finally, SEQ [          ] are all [

          ] than SEQ [          ], SEQ [                          ] than SEQ [          ], and

SEQ [                          ] and SEQ [                  ].[67]  Therefore, these

CONNUMs are [                  ] than SEQ [          ] and, as a result, have higher reported direct

VOH ranging from [          ] KRW per piece to [          ] KRW per piece.[68]

**Table 4**

| SEQ | Weight (Net Tons) | Height (Meters) | Power Cables | Platforms (Count) | Internals | Direct VOH |
|-----|-------------------|-----------------|--------------|-------------------|-----------|------------|
| [ ] | [        ]        | [ ]             | [ ]          | [ ]               | [ ]       | [      ]   |
| [ ] | [        ]        | [ ]             | [ ]          | [ ]               | [ ]       | [      ]   |
| [ ] | [        ]        | [ ]             | [ ]          | [ ]               | [ ]       | [      ]   |
| [ ] | [        ]        | [ ]             | [ ]          | [ ]               | [ ]       | [      ]   |

When examining SEQ [          ] as a part of Dongkuk's COP database as a whole, they are

relatively similar in terms of the product characteristics with [                          ]

and have [                          ] than less complex CONNUMs and [

          ] than more complex CONNUMs.  Therefore, contrary to the petitioner's claims, we

find that these CONNUMs support our conclusion that Dongkuk's direct VOH is reflective of

the product characteristics.

Next, the petitioner points to SEQ [          ], arguing that, while SEQ [ ] is [

          ] SEQ [ ] and [                                  ], its direct

VOH is only [          ] KRW per piece different than SEQ [ ].[69]  Setting aside the petitioner's

---

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *See* Petitioner's Comments at 4-5; *see also* Table 3, *supra.*

argument with respect to the weight and height of the two CONNUMs at issue, discussed above,
these CONNUMs are only different on [

                        ].[70] The more complex CONNUM is indeed more expensive, and because the
differences are related to [                                                    ], it is reasonable
that the difference in the reported conversion costs would [                    ].  Therefore, we find
that these CONNUMs support our conclusion that Dongkuk's reported direct VOH reasonably
reflects the product characteristics.

        Lastly, for SEQ [          ], the petitioner argues that because the two CONNUMs are
identical [                                              ], SEQ [   ] should have [          ] direct
VOH than SEQ [   ].[71]  We reiterate that the weight and height of the tower should be reflected in
the steel plate and direct materials costs as opposed to the conversion costs, including direct
VOH.  Therefore, we find this [                        ] need not be reflected in the direct VOH.
Further, these two CONNUMs are [                              ] given that [

                        ].[72]  The reported direct VOH for SEQ [          ] reflects this
similarity (i.e., [          ] KRW per piece and [          ] KRW per piece, respectively), while the
direct VOH reported for all other CONNUMs ranges from [          ] KRW per piece to
[          ] KRW per piece.[73]  Therefore, in the context of Dongkuk's COP database, we find that
the reported direct VOH for SEQ [          ] is reasonable.

**Table 5**

| SEQ | WEIGHT (Net Tons) | HEIGHT (Meters) | Direct VOH |
|-----|-------------------|-----------------|------------|
| [ ] | [        ]        | [     ]         | [     ]    |
| [ ] | [        ]        | [     ]         | [     ]    |

---

[70] *See* Draft Calculations at Attachment 3.
[71] *See* Petitioner's Comments at 5.
[72] *See* Draft Calculations at Attachment 3.
[73] *Id.*

## V.    FINAL RESULTS OF REDETERMINATION

In consideration of the Court's *Remand Order*, we recalculated Dongkuk's indirect conversion costs (*i.e.*, direct labor, indirect variable overhead, and fixed overhead) as annual averages, so that each CONNUM has an identical per-unit conversion cost on a per-MT basis, and calculated the difference between these revised per-unit POR weighted-average indirect conversion costs and Dongkuk's reported costs as a percentage of the reported costs and then applied this adjustment to our calculations on a per-piece basis.  As a result of this change, Dongkuk's revised weight-average dumping margin is 1.90 percent.

Because Dongkuk's weighted-average dumping margin is different from the *Final Results*, we intend to issue a *Timken*[74] notice with the amended final results should the Court sustain these final results of redetermination.

2/27/2026

X _Chris J Abbott_

Signed by: CHRISTOPHER ABBOTT
Christopher Abbott
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

---

[74] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*).