# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| WIND TOWER TRADE COALITION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>DONGKUK S&C CO. LTD.,<br><br>Defendant-Intervenor. | )<br>)<br>)<br>)<br>)   Before: Hon. Leo M. Gordon,<br>)   Senior Judge<br>)<br>)   Court No. 24-00070<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# COMMENTS OF
## DEFENDANT-INTERVENOR, DONGKUK S&C CO., LTD., IN PARTIAL OPPOSITION TO THE FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

Jarrod M. Goldfeder
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated: April 9, 2026

*Counsel to Dongkuk S&C Co., Ltd.*
*Defendant-Intervenor*

**COMMENTS OF
DEFENDANT-INTERVENOR, DONGKUK S&C CO., LTD.,
IN PARTIAL OPPOSITION TO THE FINAL RESULTS
OF REDETERMINATION PURSUANT TO COURT REMAND**

On behalf of Defendant-Intervenor, Dongkuk S&C Co. Ltd. ("DKSC"), we submit these comments in partial opposition to the results of redetermination filed by the U.S. Department of Commerce ("Commerce") on February 27, 2026, ECF No. 52 ("Remand Results"), ECF No. 58, pursuant to Wind Tower Trade Coalition v. United States, Court No. 24-00070, Slip Op. 25-148 (Ct. Int'l Trade Dec. 2, 2025) ("WTTC I"), ECF No. 48.[1]

DKSC partially opposes Commerce's Remand Results insofar as Commerce's decision to make any smoothing adjustment was unnecessary.  This is because DKSC's conversion costs already reasonably reflected costs associated with the production of wind towers for the reasons that DKSC has explained previously to Commerce and this Court.  In particular, substantial record evidence demonstrates that the conversion costs that DKSC reported—specifically direct labor, indirect variable overhead, and fixed overhead—inherently related to the production of merchandise and were attributable to the finished product's physical characteristics.  Thus, Commerce's rationale for making any adjustment to DKSC's conversion costs was unreasonable and unsupportable.  That said, DKSC partially supports Commerce's Remand Results with respect to its decision not to smooth direct conversion costs and with the methodology that Commerce used to smooth indirect conversion costs—albeit unnecessarily—and will address that aspect in a forthcoming submission due by May 14, 2026.

---

[1] This appeal concerns Commerce's final results in the 2021-2022 administrative review of the antidumping duty order on Utility Scale Wind Towers from the Republic of Korea, 89 Fed. Reg. 16,544 (Dep't Commerce Mar. 7, 2024) (final results 2021-2022 admin. rev.), P.D. 96, Appx.-16, and accompanying Issues and Decision Memorandum, P.D. 92, Appx.-15, as corrected in Utility Scale Wind Towers from the Republic of Korea, 89 Fed. Reg. 22,372 (Dep't Commerce Apr. 1, 2024) (final results 2021-2022 admin. rev.-correction), P.D. 99, Appx.-17.

This Court remanded the final results of the underlying administrative review "for further explanation, and if appropriate, reconsideration of its cost analysis under 19 U.S.C. § 1677b(f)(1)(A)" with respect to the treatment of DKSC's reported conversion costs. See WTTC I, at 14. Specifically, this Court held that Commerce's final results "fail{} to set forth how Commerce's explanation alone could lead a reasonable mind to conclude that Dongkuk's reported conversion costs were appropriate because CONNUMs vary in complexity with regard to internal components, despite evidence to the contrary." Id.

In its Remand Results, Commerce stated that it "calculated a weighted average of Dongkuk's reported indirect conversion costs (i.e., direct labor, indirect variable overhead, and fixed overhead), so that each control number (CONNUM) has an identical annual average per-unit indirect conversion cost on a weight basis" and then "calculated a CONNUM-specific percentage adjustment between the reported and annual average per-unit conversion costs, which we applied to our calculations based on per-piece basis." Remand Results, at 3. Commerce explained that although "the direct materials costs are the costs that most closely correspond to the differences in these physical characteristics, not the conversion costs," it determined that "revised indirect conversion costs calculated for these final results of redetermination more closely reflect the increasing complexity of these product characteristics" with specific reference to the weight and height product characteristics of the wind towers. Id., at 6-7.

For the reasons that DKSC explained to Commerce during the course of the underlying administrative review and to this Court on appeal no adjustment at all was warranted with respect to DKSC's indirect conversion costs. That is, Commerce in its original determination correctly: (1) interpreted the normal value provision of 19 U.S.C. § 1677b(f)(1)(A) to rely on a respondent's actual costs as reported if it is based on accounting records that are kept in

accordance with the generally accepted accounting principles of the exporting country, reasonably reflect the costs associated with the production of and sale of the merchandise; (2) determined that DKSC's conversion costs were related to the physical characteristics of the subject merchandise; and (3) followed its practice when declining to adjust any differences in conversion costs.

Since the original investigation of this proceeding, DKSC has reported its costs of manufacturing on a project-specific basis. This reflects the fact that wind towers are produced through unique, customer-designed projects, and DKSC designed its cost accounting system to track all activities on a project-specific basis. See Letter from DKSC, "Notification of Cost Reporting Issue" (Nov. 17, 2022), P.D. 23, Appx-4. Raw material and other material costs incurred are directly traceable to individual projects because DKSC procures materials according to its customers' requirements once it confirms the specifications of the wind tower project. Id. Such materials are referred to as "direct costs." Direct material costs, as well as the direct portion of variable overhead costs linked to specific projects, comprised the vast majority of DKSC's total cost of manufacturing ("COM"); whereas, indirect conversion costs represented a miniscule proportion of total COM.

DKSC presented the following detailed information in its supplemental questionnaire response to Commerce concerning its reporting methodology for conversion costs:

> Conversion costs—i.e., direct labor, indirect variable overhead, and fixed overhead—are allocated by dividing the amount of work performed (production quantity). The "VOH" field consists of direct VOH and indirect VOH. Direct VOH is directly traceable and assigned to the specific projects.

> In contrast, indirect VOH is comprised of common costs that are not directly related to certain projects and, thus, are allocated to projects on a monthly basis. That is, unlike direct costs such as raw materials, indirect costs (including scrap offsets) are akin to fixed costs that are not impacted by differences in product characteristics. In the normal course of accounting, the same unit price

3

> per ton is applied to all projects regardless of the circumstances. DKSC normally calculates indirect costs each month based on the monthly production quantity as verified in the original investigation. Consequently, projects produced in high-production quantity months typically have lower indirect costs because the costs are allocated over a greater denominator; whereas projects produced in lower-production quantity months typically have higher indirect costs because of the smaller denominator.

DKSC's Supplemental Section D Questionnaire Response (June 8, 2023), at pp. SD-25 to SD-26, P.D. 60, C.D. 37, Appx-8. DKSC thus used actual manufacturing costs from its accounting system to calculate conversion ratios and applied such ratios over monthly production quantities. As further support, DKSC also provided detailed record evidence to support the calculation of the unit conversion costs. Id., at Exhibits SD-23 to SD-27, P.D. 60, C.D. 39, Appx-8.

Because DKSC's conversion costs reasonably reflected costs associated with the production of wind towers, Commerce simply should have provided further explanation, in response to the Court's remand order, that no smoothing adjustment to DKSC's reported indirect conversion costs was warranted. DKSC's cost reporting methodology was reasonable, and substantial evidence demonstrated that all direct and indirect conversion costs inherently related to the production of merchandise and were attributable to the finished towers' physical attributes.

Commerce takes issue with DKSC's explanation (quoted above) that "{i}n the normal course of accounting, the same unit price per ton is applied to all projects regardless of the circumstances" by observing that minimum and maximum direct labor costs, indirect variable overhead, and fixed overhead vary greatly when stated on a per-weight basis. See Remand Results, at 4. Yet, Commerce misunderstands DKSC's explanation referred to the application within given months, so that is not necessarily reflected in the weighted-average costs for all reported projects in DKSC's cost database. Commerce further admonishes DKSC's methodology as "demonstrat{ing} the problems inherent with using cost averaging periods that

4

are shorter than annual POR averages," id., at 5, yet, this mistakenly overlooks the fact that it reported all costs on a project-specific basis according to the information in its normal accounting books and records.  There is nothing inherently wrong with the fact that indirect conversion costs vary between CONNUMs where all such costs were recorded and reported on a project-specific basis.

For the foregoing reasons, DKSC respectfully submits that the Court should reject Commerce's Remand Results and issue specific instructions that Commerce must calculate a weighted-average dumping margin for DKSC using its indirect conversion costs as reported, i.e., without any form of "smoothing."

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Jarrod M. Goldfeder
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated: April 9, 2026

*Dongkuk S&C Co., Ltd.*
*Defendant-Intervenor*

5

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| WIND TOWER TRADE COALITION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | Before: Hon. Leo M. Gordon, |
| ) | Senior Judge |
| Defendant, ) | |
| ) | Court No. 24-00070 |
| and ) | |
| ) | |
| DONGKUK S&C CO. LTD., ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ) | |

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that the accompanying Comments of Defendant-Intervenor, Dongkuk S&C Co., Ltd., in Partial Opposition to the Final Results of Redetermination Pursuant to Court Remand, dated April 9, 2026, complies with the word-count limitation described in the Court's March 6, 2026, Scheduling Order, ECF No. 56.  These comments contain 1,363 words according to the word-count function of the word-processing software used to prepare the brief, excluding counsel's signature block.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Jarrod M. Goldfeder
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  April 9, 2026

*Counsel to Dongkuk S&C Co., Ltd.*
*Defendant-Intervenor*