# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | | |
|---|---|---|
| WIND TOWER TRADE COALITION | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 24-00070 |
| UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| DONGKUK S&C CO. LTD., | ) | |
| Defendant-Intervenor. | ) | |

## DEFENDANT'S COMMENTS IN
## SUPPORT OF REMAND REDETERMINATION

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:
SAMUEL E. CHILDERSON
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, D.C., 20230

SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C., 20044
Email: Sosun.Bae@usdoj.gov

*Attorneys for Defendant*

May 14, 2026

**TABLE OF CONTENTS**

**PAGE**

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

    I.      Standard of Review.................................................................................................. 4

    II.     Commerce Reasonably Adjusted Dongkuk's Indirect Conversion Costs............... 4

    III.    Commerce's Determination Not to Adjust Dongkuk's Reported Direct Variable
           Overhead Costs Is Adequately Explained And Supported by Substantial
           Evidence.................................................................................................................. 8

CONCLUSION......................................................................................................................... 14

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) ............................................................................. 13

*Bethlehem Steel Corp. v. United States*,
   223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ........................................................... 4

*Boomerang Tube LLC v. United States*,
   856 F.3d 908 (Fed. Cir. 2017) ................................................................................11

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ............................................................................................ 4, 5

*Dongkuk S&C Co., Ltd. v. United States*,
   600 F.3d 1331 (Ct. Int'l Trade 2022) ............................................................... 6, 7, 8

*Itochu Bldg. Prods. V. United States*,
   733 F.3d 1140 (Fed. Cir. 2013) ..............................................................................11

*MacLean-Fogg Co. v. United States*,
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ........................................................... 4

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) ..................................................................................... 4

19 U.S.C. § 1677b(f)(1)(A) .................................................................................... 9, 10

**ADMINISTRATIVE DETERMINATION**

*Stainless Steel Bar from the United Kingdom*,
72 Fed. Reg. 43,598 (Dept. of Commerce Aug. 6, 2007) .............................................. 5

*Stainless Steel Sheet and Strip in Coils from Mexico*,
74 Fed. Reg. 6,365 (Dept. of Commerce Feb. 9, 2009) ................................................ 5

*Utility Scale Wind Towers from the Republic of Korea*,
89 Fed. Reg. 16,544 (Dept. of Commerce Mar. 7, 2024) .............................................. 2

*Certain Steel Nails from the Republic of Korea*,
 90 Fed. Reg. 20,454 (Dept. of Commerce May 14, 2025) ........................................... 13

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| WIND TOWER TRADE COALITION ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 24-00070 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| DONGKUK S&C CO. LTD., ) | |
| ) | |
| Defendant-Intervenor. ) | |

**<u>ORDER</u>**

Upon consideration of the Department of Commerce's final remand redetermination, the

parties' comments, and all other pertinent papers, it is hereby

**ORDERED** that the remand redetermination is sustained, and it is further

**ORDERED** that judgment is entered in favor of the United States


Dated: _____, 2026     _____
          New York, NY                                    SENIOR JUDGE

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | | |
|---|---|---|
| WIND TOWER TRADE COALITION | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 24-00070 |
| UNITED STATES, | ) | ███████████ |
| Defendant, | ) | |
| and | ) | |
| DONGKUK S&C CO. LTD., | ) | |
| Defendant-Intervenor. | ) | |

## DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION

Defendant, United States, hereby submits this response to the comments filed by plaintiff Wind Tower Trade Coalition (WTTC) (ECF No. 58) and defendant-intervenor Dongkuk S&C Co. Ltd (Dongkuk) (ECF No. 60) concerning the Department of Commerce's (Commerce) final remand redetermination filed pursuant to this Court's remand order (ECF No. 58). *See* Final Results of Redetermination Pursuant to Court Remand (Remand Results) (C.R.R. 11),[1] ECF No. 52. Because Commerce's remand redetermination complies with the Court's remand order and is supported by substantial evidence, the Court should sustain and enter judgment in favor of the United States.

---

[1] "P.R. _" is a citation to the public record of the underlying administrative review record and "C.R._" is a citation to the confidential version of the underlying record. "P.R.R." is a citation to the public record of the remand redetermination. "C.R.R." is a citation to the confidential version of the record of the remand redetermination.

**BACKGROUND**

In its final results of the 2021-2022 administrative review of the antidumping duty order covering wind towers from Korea, the Department of Commerce (Commerce) accepted Dongkuk's reported conversion costs—which are the total incurred costs necessary to convert steel plates into the subject wind towers and include direct labor costs, variable overhead costs, and fixed overhead costs—in calculating the cost of production. *See Utility Scale Wind Towers from the Republic of Korea*, 89 Fed. Reg. 16,544 (Dep't of Commerce Mar. 7, 2024) (final results), and accompanying Issues and Decision Memorandum (IDM) at Cmt. 3; Remand Order at 6. Commerce relied on Dongkuk's reported conversion costs for both direct variable overhead costs, which are linked to specific projects, and indirect variable costs, which are not impacted by differences in production characteristics. *Id.*

Before this Court, WTTC challenged Commerce's acceptance of Dongkuk's reported conversion costs on multiple grounds. Although the Court rejected certain arguments lodged by WTTC, the Court held that Commerce had failed to adequately explain why Dongkuk's conversion costs were appropriate. Remand Order at 12-14. Specifically, the Court held that Commerce had failed to adequately: (1) address WTTC's argument that Dongkuk's reported conversion costs were unreasonable because they did not reflect one of the more important product characteristics (tower sections) or the second and third characteristics (weight and height), and (2) explain how the complexities of the less important product characteristics are "appropriately reflected in Dongkuk's reported conversion costs." *Id.*

In its draft remand redetermination, Commerce reconsidered its prior position and determined that Dongkuk's indirect conversion costs, which are not tied to specific projects, do not reasonably reflect the costs associated with producing the merchandise under consideration;

Commerce thus applied an adjustment, calculating a period-of-review annual average of Dongkuk's indirect conversion costs to address the impact of month-to-month fluctuations. Draft Remand Redetermination at 3-7.  Commerce also further explained why Dongkuk's reported direct variable overhead costs reasonably reflect the costs associated with producing the merchandise under consideration.  *Id.* at 7-8.

In the final remand redetermination, Commerce continued to apply a period-of-review annual average for Dongkuk's indirect conversion costs and rely on Dongkuk's reported costs for direct variable overhead.  Commerce explained that Dongkuk allocates its indirect conversion costs on a monthly basis and that, despite Dongkuk's claims that the "same unit price per ton" is applied to all projects, its indirect conversion costs actually vary greatly and do not tie to product characteristics.  Remand Results at 3-4.  To address this distortion, Commerce calculated a weighted period-of-review annual average of Dongkuk's indirect conversion costs, ensuring that each control number (CONNUM) has an identical annual average per-unit indirect conversion cost on a weight basis.  *Id.* at 5.  Commerce then calculated a CONNUM-specific percentage adjustment between the reported and annual average per-metric ton conversion costs, which it then applied to its calculations based on a per-piece basis.  *Id.*

With regard to Dongkuk's direct variable overhead, Commerce determined that, because direct variable overhead costs tie directly to individual projects, they do not suffer from the same distortive allocation methodology as the indirect conversion costs.  *Id.* at 7.  Commerce also explained that Dongkuk's direct material costs—in particular the steel plate costs—correspond to most of the physical differences in the product characteristics because the weight and height characteristics are based on the wind tower's dimensions and thus most of the costs related to differences in those characteristics correspond to the amount of steel plate used to produce a

3

wind tower. *Id.* at 6. Even so, Commerce found that Dongkuk's reported direct variable overhead is reflective of the product characteristics of the wind towers, given that ▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ when the direct variable overhead increases, and that more complex CONNUMS incorporating ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆ also tend to have ▆▆▆▆▆▆▆▆▆▆▆▆▆. *Id.* at 7-8. Commerce thus made no adjustment to Dongkuk's reported direct variable overhead.

## ARGUMENT

### I.    Standard of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002). Accordingly, the Court will sustain Commerce's redeterminations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

### II.    Commerce Reasonably Adjusted Dongkuk's Indirect Conversion Costs

Commerce's determination that Dongkuk's reported indirect conversion costs do not reasonably reflect the cost of producing wind towers and its subsequent adjustment to a period-of-review annual average complies with the Court's remand order and is supported by substantial evidence.

Despite Dongkuk's claims that the "same unit price per ton is applied to all projects{,}" the record demonstrates that its indirect conversion costs vary greatly by project and are

unrelated to product characteristics. *See* Remand Results at 4 (citing Draft Calculations at Att. 3 (C.R.R. 8)); Dongkuk Supp. Section D Cost of Production File - DKSCCOP02 (Dongkuk Cost Database) (C.R. 39); Dongkuk Supp. Section D Resp. at SD-25 to SD-26 (P.R. 60, C.R. 37).[2] As Commerce explained, the differences in reported indirect conversion costs appear to be unrelated to product characteristics because the costs reported do not increase when CONNUMs increase in complexity. Remand Results at 4. Accordingly, Commerce reasonably found that the differences in the reported indirect conversion costs are attributable to Dongkuk's monthly allocation methodology. *Id.* Put another way, because Dongkuk allocates these costs on a monthly basis when there may be variation in production quantities between months, differences in reported indirect conversion costs arise. *Id.*

To address this distortion, Commerce determined to apply a period-of-review annual average of indirect conversion costs on a per-metric ton basis, in accordance with its normal practice for calculating cost of production. *Id.* at 4-5 (citing, *e.g.*, *Stainless Steel Sheet and Strip in Coils from Mexico*, 74 Fed. Reg. 6,365 (Dept. of Commerce Feb. 9, 2009), and accompanying IDM at Cmt. 5; *Stainless Steel Bar from the United Kingdom*, 72 Fed. Reg. 43,598 (Dept. of Commerce Aug. 6, 2007), and accompanying IDM at Cmt. 1). As Commerce explained, this methodology "would reduce the impact of month-to-month fluctuations that are not reflective of either the actual costs to produce the merchandise under consideration or the product characteristics." Remand Results at 5.

---

[2] Specifically, Dongkuk's indirect conversion costs varied between ███ Korean won (KRW) per metric ton and ███ KRW per metric ton for direct labor, between ███ KRW per metric ton and ███ KRW per metric ton for indirect variable overhead, and between ███ KRW per metric ton and ███ KRW per metric ton for fixed overhead. *See* Remand Results at 4 (citing Draft Calculations at Att. 3); Dongkuk Cost Database (C.R. 39).

Dongkuk contests Commerce's decision not to rely on Dongkuk's reporting of indirect conversion costs on a monthly allocation basis and instead adjust the indirect conversion costs to a period-of-review annual average, claiming that its reported indirect conversion costs reasonably reflect the cost of producing the subject wind towers.[3]  Dongkuk Comments at 1.

As an initial matter, although Dongkuk refers to Commerce's adjustment as a "smoothing adjustment," Dongkuk Comments at 1, Commerce did not actually apply a smoothing adjustment to Dongkuk's indirect conversion costs.  A smoothing adjustment implies that every CONNUM with identical characteristics should have the same indirect conversion cost.  *See Dongkuk S&C Co., Ltd. v. United* States, 600 F.3d 1331, 1338 (Ct. Int'l Trade 2022).  But Dongkuk's indirect conversion costs are not related to specific projects or to specific physical characteristics.  As such, Dongkuk allocates monthly indirect conversion costs on a flat per-metric ton basis in its normal books and records.  *See* Remand Results at 3; Dongkuk Supp. Section D Resp. at SD-25 to SD-26.  Because monthly production quantities fluctuated over the period of review, this monthly allocation method caused distortions in the reported costs unrelated to the physical characteristics of the underlying projects.  Remand Results at 5.  Commerce thus adjusted Dongkuk's reported CONNUM-specific, per-piece indirect conversion costs by reallocating those costs based on the annual production quantity in metric tons instead of monthly production quantities in metric tons.  *Id.* at 6 (citing Draft Calculations at Att. 3).  The per-piece indirect conversion costs are not "smoothed" among CONNUMs with similar characteristics but rather

---

[3]  Although Dongkuk disputes Commerce's decision not to rely on the allocation methodology in Dongkuk's normal books and records, it agrees that, if Commerce properly declined to rely on the normal books and records, the period-of-review annual average methodology is sound.  Dongkuk Comments at 1.

adjusted over all CONNUMs to mitigate the distortive impact of allocating fixed costs using monthly production quantities when production fluctuates over time.  *Id.* at n.37.

Dongkuk's only arguments against Commerce's adjustment are that its reported indirect conversion costs are based on actual manufacturing costs—with conversion ratios applied over monthly production quantities—and reasonably reflect the costs associated with the production of wind towers.  Dongkuk Comments at 4.  In support, Dongkuk claims that it reported costs of manufacturing on a project-specific basis in its normal books and records and that its indirect conversion costs were a miniscule proportion of the total cost of manufacturing.  *Id.* at 3,5.

But Dongkuk fails to address Commerce's primary reasoning for not relying on the indirect conversion costs as allocated on a monthly basis:  that Dongkuk's reporting shows large variations in per-metric ton indirect conversion costs unrelated to physical characteristics. Remand Results at 4, 11.  Because Dongkuk's indirect conversion costs relate to production in general rather than to specific projects or to the physical characteristics of the wind towers, its reporting of the monthly indirect conversion costs when production fluctuated by month did not reasonably reflect the cost of producing wind towers.  *Id.* at 3-7.  Commerce thus properly adjusted the costs using a period-of-review annual average.

Dongkuk takes issue with Commerce's observation regarding the large variance in Dongkuk's costs on a per-weight basis, arguing that "{t}here is nothing inherently wrong with the fact that indirect conversion costs vary between CONNUMs where all such costs were recorded and reported on a project-specific basis."  But Dongkuk offers no support for this claim, which, in any event, does not rebut Commerce's finding that this variance, which is not related to product characteristics but rather a result of Dongkuk's erratic production levels, renders

Dongkuk's reporting distortive and not reflective of the product characteristics or costs to produce subject merchandise.  Remand Results at 5.

Because Dongkuk fails to undermine Commerce's reasoning for adjusting Dongkuk's indirect conversion costs, the Court should sustain Commerce's determination.

**III.    Commerce's Determination Not to Adjust Dongkuk's Reported Direct Variable Overhead Costs Is Adequately Explained And Supported by Substantial Evidence**

In compliance with the Court's remand order, Commerce further explained why it made no adjustments to Dongkuk's reported direct variable overhead.  Unlike Dongkuk's indirect conversion costs, its direct variable overhead is "directly traceable and assigned to the specific projects."  Dongkuk Supp. Section D Resp. at SD-25 (P.R. 60, C.R. 37).  As such, the issues related to Dongkuk's monthly allocation methodology are not present in Dongkuk's direct variable overhead reporting.  Remand Results at 7.  In addition, as the record establishes, Dongkuk's reported direct variable overhead costs are reflective of the product characteristics of the wind towers.  Examining the data for ▮ different CONNUMS demonstrates that, when Dongkuk's costs are sorted according to direct variable overhead, as direct variable overhead increases, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮" as well.  *Id.* at 7-8 (citing Draft Calculations at Att. 3); *see also* Dongkuk Cost Database.  Moreover, CONNUMs with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ also generally had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *Id*.  These general trends show the linkage between direct variable overhead costs and product characteristics and support Commerce's determination that Dongkuk's reported direct variable overhead "reasonably reflects" the cost of producing wind towers, rendering an adjustment unnecessary.

WTTC contends that Commerce's remand redetermination relies on "faulty logic" and improperly imposes evidentiary burdens on WTTC. WTTC Comments at 2. Specifically, WTTC claims that Commerce did not explain why project-specific cost reporting reflects physical differences in merchandise and argues that the fact that Dongkuk's direct variable overhead costs were recorded on a project-specific basis does not explain how those costs reflect the physical characteristics of Dongkuk's wind towers. WTTC Comments at 3. These assertions are belied by Commerce's explanation in its remand redetermination.

As WTTC points out, under 19 U.S.C. § 1677b(f)(1)(A), Commerce will normally calculate costs based on a respondent's books and records if they reasonably reflect the costs of producing merchandise under consideration—in this case, wind towers. If the reported costs are not reasonably reflective, Commerce may make adjustments to the respondent's reported costs. *Id.*; *see also* IDM at Cmt. 1. Thus, the default is to rely on a respondent's books and records. Because Dongkuk's direct variable overhead costs are directly traceable to projects, those costs are recorded on project-specific basis, unlike indirect conversion costs. Remand Results at 12-13. As such, they are not distorted by varying monthly production levels. *Id.* Moreover, the record evidence demonstrates the tie between the product characteristics and the direct variable overhead costs. *Id.* at 8. Accordingly, Commerce had no basis to depart from the default method of relying on Dongkuk's direct variable overhead costs, as recorded in its books and records, and instead make an adjustment.

WTTC misconstrues the record evidence, citing Dongkuk's monthly breakdown of costs for specific projects to claim that direct variable overhead costs were "allocated" to a project in a ████████████. WTTC Comments at 3. But these expenses were not "allocated" on a monthly basis; rather, the costs were incurred for certain projects in ████████████. Remand Results at

12-13; Dongkuk Supp. Section D Resp. at SD-24.  Unlike with the indirect conversion costs, where costs are not related to specific projects, direct conversion costs incurred in a ▮▮▮▮▮ ▮▮▮▮ are related to the specific projects produced in that ▮▮▮▮.  Because the direct conversion costs were assigned to the specific projects incurred in ▮▮▮▮▮, Dongkuk's reporting of direct conversion costs is not distortive; rather, it is representative of the specific costs that are directly traceable and assigned to the specific projects that had production activities in ▮▮▮▮▮.

According to WTTC, Commerce "upended its traditional analysis" and placed an "inappropriate evidentiary burden" on WTTC by requiring it to show that a specific, non-physical factor explained the variations in direct variable overhead.  *Id.* at 4.  But WTTC seemingly misunderstands the relevant framework and analysis that Commerce must undertake.  As explained above, the default is to rely on a respondent's normal books and records if they reasonably reflect the costs of producing subject merchandise and those books and records are kept in accordance with generally accepted accounting principles.[4]  *See* 19 U.S.C. § 1677b(f)(1)(A).  As such, Commerce must first find that a respondent's reported costs are not reasonably reflective of the costs of producing subject merchandise before it can make an adjustment.  Because Commerce found that Dongkuk's reported direct variable overhead costs reasonably reflect the costs of production (as demonstrated by product characteristics), Commerce did not adjust costs.  Commerce did not "upend" its traditional analysis; rather, it adhered to the statutory requirements.  Nor did Commerce place an "inappropriate evidentiary burden" on WTTC—Commerce found, based on record evidence, that the variations in direct

---

[4] Whether Dongkuk's books and records are kept in accordance with generally accepted accounting principles is not at issue here.

variable overhead were generally explained by the differences in the physical characteristics. If WTTC disagreed, it was incumbent on WTTC to substantiate its position—through record evidence—that the variations were not related to the product characteristics. That is not improper burden-shifting.

WTTC next contends that Commerce failed to consider the relationship between direct variable overhead and the weight and height product characteristics, but instead relied on an explanation that the differences in the weight and height characteristics are accounted for by the amount of steel plate consumed and the associated steel plate costs. WTTC Comment at 5 (citing Remand Results at 6, 15). According to WTTC, taller and heavier towers necessarily use more steel plates and should therefore have higher direct variable overhead costs.

But WTTC did not raise this argument before Commerce, even though Commerce stated in its draft remand redetermination that "{t}he weight and height product characteristics are based on the wind tower's dimensions; by extension, most of the costs related to the differences in those product characteristics correspond to the amount of steel plate used to produce a given wind tower." Draft Remand Results at 6 (C.R.R. 1); *see also* Petitioner Comments on Draft Remand (C.R.R. 9). Accordingly, WTTC has failed to exhaust the argument and the Court should not consider it, given that none of the limited exceptions to the exhaustion requirement apply. *See Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017); *Itochu Bldg. Prods. V. United States*, 733 F.3d 1140, 1145-48 (Fed. Cir. 2013).

Even if the Court were to consider the argument, the argument must fail. First, Commerce's statements regarding the relationship between the weight and height characteristics and steel plate are not central to its determination. Rather, Commerce explained that, generally, as direct variable overhead increases, ███████████████████████████████████.

11

Remand Results at 7-8, 14.  Commerce thus tied those characteristics to direct variable overhead. In any event, contrary to WTTC's representations, Commerce sufficiently explained that weight and height need not correspond closely to direct variable overhead because the differences in those characteristics are already accounted for by the consumed steel plate and corresponding costs.  *Id.* at 6, 15.  Because most of the differences in those physical characteristics are already accounted for by the differences in steel plate costs, Commerce reasonably found that only a small portion may be attributable to direct variable overhead; as such, Commerce reasonably concluded that weight and height characteristics do not need to closely correspond to the variation in direct variable overhead.  *Id.* at 15.

WTTC also claims that Commerce did not account for unexplained differences in direct variable overhead when it smoothed plate costs.  But Commerce did not simply accept Dongkuk's reported direct variable overhead, instead examining and explaining how these costs reflect the physical characteristics of wind towers.  Remand Results at 7-8, 12-18.  In arguing that Commerce should smooth direct variable overhead similarly to how it smoothed steel plate costs, WTTC misunderstands the applicable requirements.  Again, to deviate from its normal reliance on respondent's reporting, Commerce must find that the reporting does not reasonably reflect the costs of producing merchandise under consideration.  It did not make such a finding with regard to direct variable overhead costs, and that determination is supported by the record. WTTC observing that Commerce smoothed steel plate costs does not necessitate a similar smoothing for direct variable overhead.

Finally, WTTC argues that Commerce's analysis of weight, height, and internal complexity is unsupported by substantial evidence, pointing to a few specific instances in Commerce's CONNUM comparison that, according to WTTC, show that weight, height, and

12

complexity do not drive differences in direct variable overhead. WTTC Comments at 7-9. Commerce considered WTTC's examples and found them unconvincing; the Court should do the same. First, WTTC cites no support for its apparent position that there must be a 100 percent match between the ███████ in direct variable overhead costs and the █████████████ ██████████████████████████. Commerce never claimed an exact match; rather, it found that the direct variable overhead costs are reasonably reflective of the costs to produce wind towers because those costs generally ████████ as ███████████████ ████████ did. Remand Results at 7-8 (citing Draft Calculations at Att. 3); *see also* Dongkuk Cost Database. This conclusion is reasonable and supported by the record as a whole; as such, the Court should sustain it even if some detracting evidence exists. *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562-63 (Fed. Cir. 1984).

In any event, Commerce explained that granular comparisons are not useful in determining whether Dongkuk's reported direct variable overhead costs overall reasonably reflect the cost of producing wind towers, and found that cherry-picked examples that do not fully reflect the complexity of product characteristics do not invalidate the wider set of data. Remand Results at 14. And Commerce has found in other determinations that, when differences in per-unit conversion costs can be generally attributed to differences in physical characteristics, it is appropriate to rely on those costs. *See Certain Steel Nails from the Republic of Korea*, 90 Fed. Reg. 20,454 (Dept. of Commerce May 14, 2025), and accompanying IDM at Cmt. 6. Pointing to a few outliers is "insignificant in relation to the totality of the reported production information." *Id.* Commerce fully explained why the examples complained about by WTTC do not actually undermine its overall conclusion, going through each CONNUM comparison in detail. Remand Results at 14-18. Because Commerce's determination that Dongkuk's reported

13

direct variable overhead costs reasonably reflect the cost of producing wind towers is supported

by substantial evidence and adequately explained, the Court should sustain Commerce's

determination.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand

redetermination and enter judgment for the United States.

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:
SAMUEL E. CHILDERSON              s/Sosun Bae
Attorney                         SOSUN BAE
Department of Commerce           Senior Trial Counsel
Office of Chief Counsel for Trade U.S. Department of Justice
Enforcement & Compliance         Civil Division
1401 Constitution Avenue, NW     Commercial Litigation Branch
Washington, D.C., 20230          P.O. Box 480, Ben Franklin Station
                                 Washington, D.C., 20044
                                 Email: Sosun.Bae@usdoj.gov

May 14, 2026                     *Attorneys for Defendant*

14

## CERTIFICATE OF COMPLIANCE

Pursuant to this Court's March 6, 2026 order, I hereby certify that this brief complies with the Court's word count limitations.  According to the word count calculated by the Microsoft Word processing system used to prepare this brief, I certify that this brief contains 3,750 words, excluding those exempted portions of this brief.

/s/ Sosun Bae
SOSUN BAE

## CERTIFICATE OF SERVICE

Pursuant to USCIT Rule 5(d)(1)(B) and Administrative Order 25-01, I hereby certify that, on this 14th day of May, 2026, I caused the confidential version of this brief to be served on the parties via a secure file-sharing site.

/s/ Sosun Bae
SOSUN BAE