## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| | ) | |
| WIND TOWER TRADE COALITION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Before: Hon. Leo M. Gordon, Senior Judge |
| | ) | |
| v. | ) | |
| | ) | Court No. 24-00070 |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DONGKUK S&C CO. LTD., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

## COMMENTS OF
## DEFENDANT-INTERVENOR, DONGKUK S&C CO., LTD.,
## IN PARTIAL SUPPORT OF THE FINAL RESULTS
## <u>OF REDETERMINATION PURSUANT TO COURT REMAND</u>

Jarrod M. Goldfeder
MacKensie R. Sugama

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated: May 14, 2026

*Counsel to Dongkuk S&C Co., Ltd.*
*Defendant-Intervenor*

**COMMENTS OF
DEFENDANT-INTERVENOR, DONGKUK S&C CO., LTD.,
IN PARTIAL SUPPORT OF THE FINAL RESULTS
<u>OF REDETERMINATION PURSUANT TO COURT REMAND</u>**

On behalf of Defendant-Intervenor, Dongkuk S&C Co. Ltd. ("DKSC"), we submit these comments in <u>partial support</u> of the results of redetermination filed by the U.S. Department of Commerce ("Commerce") on February 27, 2026, ECF No. 52 ("Remand Results"), ECF No. 58, pursuant to <u>Wind Tower Trade Coalition v. United States</u>, Court No. 24-00070, Slip Op. 25-148 (Ct. Int'l Trade Dec. 2, 2025) ("<u>WTTC I</u>"), ECF No. 48.[1]

DKSC partially supports Commerce's Remand Results regarding the methodology Commerce adopted, to the extent the Court agrees that Commerce's decision to make any smoothing adjustment was reasonable. As explained in DKSC's comments in partial opposition to Commerce's Remand Results, no adjustment at all was warranted with respect to DKSC's indirect conversion costs. <u>See</u> ECF No. 60 (Apr. 6, 2026). That said, DKSC supports Commerce's decision to reject the proposed methodology that the plaintiff advocated.

Defendant submitted lengthy comments today in support of Commerce's Remand Results. <u>See</u> ECF No. 62 (May 14, 2026). In the interest of judicial efficiency, DKSC agrees with and supports Defendant's arguments insofar as they relate to the reasonableness Commerce's determination <u>not</u> to adjust DKSC's reported direct variable overhead costs and the methodology that Commerce employed to smooth DKSC's indirect conversion costs. <u>Id.</u>, at 8-14. DKSC supplements Defendant's arguments as set forth below.

---

[1] This appeal concerns Commerce's final results in the 2021-2022 administrative review of the antidumping duty order on <u>Utility Scale Wind Towers from the Republic of Korea</u>, 89 Fed. Reg. 16,544 (Dep't Commerce Mar. 7, 2024) (final results 2021-2022 admin. rev.), P.D. 96, Appx-16, and accompanying Issues and Decision Memorandum, P.D. 92, Appx-15, as corrected in <u>Utility Scale Wind Towers from the Republic of Korea</u>, 89 Fed. Reg. 22,372 (Dep't Commerce Apr. 1, 2024) (final results 2021-2022 admin. rev.-correction), P.D. 99, Appx-17.

Since the original investigation of this proceeding, DKSC has reported its costs of manufacturing on a project-specific basis.  This reflects the fact that wind towers are produced through unique, customer-designed projects, and DKSC designed its cost accounting system to track all activities on a project-specific basis.  See Letter from DKSC, "Notification of Cost Reporting Issue" (Nov. 17, 2022), P.D. 23, Appx-4.  Raw material and other material costs incurred are directly traceable to individual projects because DKSC procures materials according to its customers' requirements once it confirms the specifications of the wind tower project.  Id. Such materials are referred to as "direct costs."  Direct material costs, as well as the direct portion of variable overhead costs linked to specific projects, comprised the vast majority of DKSC's total cost of manufacturing ("COM"); whereas, indirect conversion costs represented a miniscule proportion of total COM.

DKSC presented detailed information in its supplemental questionnaire response to Commerce concerning its reporting methodology for conversion costs.  See DKSC's Supplemental Section D Questionnaire Response (June 8, 2023), at pp. SD-25 to SD-26, P.D. 60, C.D. 37, Appx-8 ("Direct VOH is directly traceable and assigned to the specific projects.  In contrast, indirect VOH is comprised of common costs that are not directly related to certain projects and, thus, are allocated to projects on a monthly basis.  That is, unlike direct costs such as raw materials, indirect costs (including scrap offsets) are akin to fixed costs that are not impacted by differences in product characteristics. . . .")  DKSC thus explained that it used actual manufacturing costs from its accounting system to calculate conversion ratios and applied such ratios over monthly production quantities.  DKSC also provided detailed record evidence to demonstrate and support the calculation of the unit conversion costs.  Id., at Exhibits SD-23 to SD-27, P.D. 60, C.D. 39, Appx-8.

In its Remand Results, Commerce stated that it "calculated a weighted average of Dongkuk's reported indirect conversion costs (*i.e.*, direct labor, indirect variable overhead, and fixed overhead), so that each control number (CONNUM) has an identical annual average per-unit indirect conversion cost on a weight basis" and then "calculated a CONNUM-specific percentage adjustment between the reported and annual average per-unit conversion costs, which we applied to our calculations based on per-piece basis."  Remand Results, at 3.

Commerce thus correctly recognized that direct material costs and the direct portion of variable overhead costs link to specific projects and comprise vast majority of DKSC's total COM.  Therefore, Commerce's methodology in the Remand Results is reasonable to the extent that it redistributed the indirect costs according to weight, resulting in truer smoothed indirect conversion costs stated on a per-unit basis, while not adjusting the direct portion of conversion costs that required no such smoothing adjustment based on substantial record evidence.

For the foregoing reasons, if the Court agrees that Commerce's decision to perform any type of smoothing was reasonable and supported by substantial evidence, DKSC respectfully submits that the Court should affirm Commerce's Remand Results.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Jarrod M. Goldfeder
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated: May 14, 2026

*Dongkuk S&C Co., Ltd.*
*Defendant-Intervenor*

3

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| WIND TOWER TRADE COALITION, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| UNITED STATES, | )  Before: Hon. Leo M. Gordon, |
|  | )  Senior Judge |
| Defendant, | ) |
|  | )  Court No. 24-00070 |
| and | ) |
|  | ) |
| DONGKUK S&C CO. LTD., | ) |
|  | ) |
| Defendant-Intervenor. | ) |
|  | ) |

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that the accompanying Comments of Defendant-Intervenor, Dongkuk S&C Co., Ltd., in Partial Support of the Final Results of Redetermination Pursuant to Court Remand, dated May 14, 2026, complies with the word-count limitation described in the Court's March 6, 2026, Scheduling Order, ECF No. 56.  These comments contain 807 words according to the word-count function of the word-processing software used to prepare the brief, excluding counsel's signature block.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Jarrod M. Goldfeder
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  May 14, 2026

*Counsel to Dongkuk S&C Co., Ltd.*
*Defendant-Intervenor*