Slip Op. 26-104

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WIND TOWER TRADE COALITION,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant,<br>and<br>DONGKUK S&C CO., LTD.,<br>Defendant-Intervenor. | Before: Leo M. Gordon, Judge<br>Court No. 24-00070 |

**OPINION**

[Sustaining U.S. Department of Commerce's Remand Results.]

Dated: September 4, 2026

John A. Riggins, Wiley Rein LLP, of Washington, D.C., argued for Plaintiff Wind Tower Trade Coalition. With him on the brief were Alan H. Price, Laura El-Sabaawi, Robert E. DeFrancesco, III, and Tatiana Sainati.

Tate N. Walker, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. On the brief were Brett Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, Reginald T. Blades, Jr., Assistant Director, and Sosun Bae, Senior Trial Counsel, Civil Division, U.S. Department of Justice. Of counsel was Samuel E. Childerson, Attorney, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Jarrod M. Goldfeder, Trade Pacific PLLC, of Washington, D.C., argued for Defendant-Intervenor Dongkuk S&C Co., Ltd. With him on the brief was MacKensie R. Sugama.

Gordon, Judge: This action involves the U.S. Department of Commerce's ("Commerce") final results in the administrative review of utility scale wind towers from the Republic of Korea. See Utility Scale Wind Towers from the Republic of Korea, 89 Fed. Reg. 16,544 (Dep't of Commerce Mar. 7, 2024), as corrected in Utility Scale Wind Towers from the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2021-2022; Correction, 89 Fed. Reg. 22,372 (Dep't of Commerce Apr. 1, 2024), and accompanying Issues and Decision Memorandum.

Before the court is Commerce's Final Results of Redetermination Pursuant to Court Remand, ECF No. 52-1 ("Remand Results"), filed pursuant to Wind Tower Trade Coal. v. United States, 49 CIT ___, 810 F. Supp. 3d 1351 (2025) ("Wind Tower I"). Plaintiff Wind Tower Trade Coalition challenges Commerce's decision not to adjust Defendant-Intervenor Dongkuk S&C Co., Ltd.'s ("Dongkuk" or "DKSC") direct variable overhead costs ("direct VOH" or "direct conversion costs"), while Defendant-Intervenor challenges Commerce's determination to adjust Dongkuk's indirect conversion costs. See Pl.'s Comments in Partial Opp'n, ECF No. 58 ("Pl.'s Opp'n Comments"); Def.-Intervenor Dongkuk's Comments in Partial Opp'n, ECF No. 60 ("Def.-Intervenor's Opp'n Comments"); see also Pl.'s Comments in Partial Supp., ECF No. 61; Def. Gov.'s Reply to Comments, ECF No. 62 ("Def.'s Resp."); and Def.-Intervenor Dongkuk's Comments in Partial Supp., ECF No. 64. The court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i)[1],

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions in Title 19 of the U.S. Code, 2024 edition.

and 28 U.S.C. § 1581(c). The court presumes familiarity with prior proceedings in this action. For the reasons set forth below, the court sustains Commerce's Remand Results.

## I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr. & Richard Murphy, Administrative L. and Prac. § 9.24[1] (3d ed. 2026). Therefore, when addressing

a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, Nat'l Courts § 3.6 (5th ed. 2026).

## II. Background

The court remanded this matter to Commerce for further explanation, and if appropriate, reconsideration of its cost analysis under 19 U.S.C. § 1677b(f)(1)(A) because: (1) "Commerce failed to explain why Dongkuk's reported conversion costs were appropriate"; (2) "Commerce did not address the first three enumerated CONNUM characteristics"; and (3) "Defendant's explanation as to the significance in differences between direct and indirect variable conversion costs is not reflected within Commerce's [decision]." Wind Tower I, 810 F. Supp. 3d at 1358–59. On remand, "after reviewing the record evidence, [Commerce] reconsidered [its] treatment of Dongkuk's indirect conversion costs." Remand Results at 3. As a result of this reconsideration, it recalculated and adjusted Dongkuk's weight-average dumping margin to 1.90 percent. Id. at 19.

## III. Discussion

### A. Commerce's Reconsideration of Dongkuk's Indirect Conversion Costs

Under 19 U.S.C. § 1677b(f)(1)(A), Commerce relies on a respondent's records: (1) "if such records are kept in accordance with the generally accepted accounting principles of the exporting country" and (2) "reasonably reflect the costs associated with the production and sale of the merchandise." On remand, Commerce first looked at Dongkuk's reported indirect conversion costs. In so doing, Commerce explained

that Dongkuk "allocated its indirect conversion costs, which are generally 'fixed', by production quantity (in metric tons (MT)) in its normal books and records" and that "'in the normal course of accounting, the same unit price per ton is applied to all projects regardless of the circumstances.'" Remand Results at 3. However, in its review, Commerce found that despite Dongkuk's assertion that "the same unit price per ton is applied to all projects," Dongkuk's reported indirect conversion costs actually "vary greatly in spite of its claim that the 'same unit price per ton' is applied to all projects." Id. Commerce similarly found that "[t]he differences in the reported indirect conversion costs also appear to be unrelated to the product characteristics, as there is no discernable increase in these costs when the reported CONNUMs increase in complexity." Id. Consequently, Commerce found that while "Dongkuk reported its costs based on its normal books and records, in which Dongkuk allocates indirect conversion costs on a monthly basis," its indirect conversion costs methodology "is distortive and not reflective of the actual cost of producing the merchandise," and "appropriate to deviate from." Id. (emphasis added).

Because it found that Dongkuk's indirect conversion costs methodology is not reflective of producing the wind towers, Commerce decided to utilize its normal practice of relying on annual average costs during the period of review ("POR") to calculate a respondent's cost of production. Id. According to Commerce, POR annual average costs "'minimize fluctuations in the production cost experienced by the respondent over short periods of time, where these fluctuations do not reflect differences in the physical characteristics of the products'" and "'reduce the effect of fluctuating raw material costs,

erratic production levels, major repairs and maintenance, inefficient production runs, and seasonality.'" Id. at 4–5 (quoting Stainless Steel Bar from the United Kingdom, 72 Fed. Reg. 43,598 (Dep't of Commerce Aug. 6, 2007) ("Stainless Steel Bar from the UK"), and accompanying Issues and Decision Memorandum). Commerce's POR average calculation was then applied to "the reported CONNUM-specific indirect conversion costs on a per-piece basis . . . to calculate the revised indirect conversion costs on a per-piece basis." Id. at 6. Ultimately, Commerce found that this revised indirect conversion cost methodology "more closely reflect[ed] the increasing complexity of th[e] product characteristics" laid out by the court: weight, height, and tower sections, "such that there are no longer unexplained variations." Id. at 7.

In its opposition comments, Dongkuk argued that, as previously explained to the agency and the court, its "conversion costs reasonably reflected costs associated with the production of wind towers." Def.-Intervenor's Opp'n Comments at 4. Therefore, in response to the court in Wind Tower I, Dongkuk maintains that Commerce "should provide further explanation that no smoothing adjustment to DKSC's reported indirect conversion costs was warranted" and that its "cost reporting methodology was reasonable[, as] substantial record evidence demonstrated." Id.

Despite Dongkuk's position, Commerce continued to recalculate Dongkuk's indirect conversion costs in accordance with its draft remand redetermination, finding that "Dongkuk essentially reiterates its explanation from its supplemental questionnaire" and "did not address in its comments the issue of annual average costs, the basis for [Commerce's] decision to recalculate its indirect conversion costs." Remand Results

at 9–10. Commerce highlighted that "Dongkuk cites nothing to justify Commerce's noted variations and instead asks the agency to continue to rely on its normal books and records." Id. at 11. Critically, Commerce also found that Dongkuk's support of its own methodology in its questionnaire responses was immaterial because the agency already determined that Dongkuk's books and records did not reasonably reflect the cost of production. Id.

As to this litigation, Dongkuk argues for the same reasons it explained to Commerce, and this court previously, that "no adjustment at all was warranted" as to Dongkuk's indirect conversion costs. Def.-Intervenor's Opp'n Comments at 2. Further, Dongkuk maintains that "[b]ecause [its] conversion costs reasonably reflected costs associated with the production of wind towers, Commerce simply should have provided further explanation, in response to the Court's remand order, that no smoothing adjustment to [Dongkuk's] reported indirect conversion costs was warranted." Id. at 4. Dongkuk's arguments relate solely to its view that "[Dongkuk's] cost reporting methodology was reasonable, and substantial evidence demonstrated that all direct and indirect conversion costs inherently related to the production of merchandise and were attributable to the finished towers' physical attributes." Id. It now asks the court to "reject Commerce's Remand Results and issue specific instructions that Commerce must calculate a weighted-average dumping margin for DKSC using its indirect conversion costs as reported." Id. at 5.

Commerce explained that despite Dongkuk's statement about indirect conversion costs being the "same unit price per ton [ ] applied to all projects' . . . [Commerce's] review

of Dongkuk's recorded cost data demonstrates [that] this is not so." Remand Results at 4. Because Dongkuk's records were found not to reasonably reflect the cost of production, Commerce then turned to its "normal practice" of "rely[ing] on POR-annual average costs to calculate a respondent's cost of production." Id. at 4–5 (citing Stainless Steel Bar from the UK). In Commerce's view, applying its "normal practice" of "rely[ing] on POR-annual average costs to calculate a respondent's cost of production" is the better methodology to determine indirect conversion costs because it "would reduce the impact of month-to-month fluctuations that are not reflective of either the actual costs to produce the merchandise under consideration or the product characteristics." Id. Regarding Defendant-Intervenor's comments, Defendant explains that "Dongkuk did not address in its comments the issue of annual average costs, the basis for [Commerce's] decision to recalculate [Dongkuk's] indirect conversion costs" and therefore "provided no basis to deviate from [Commerce's] approach in the Draft Remand." Id. at 8.

Further, Defendant-Intervenor's draft remand opposition comments and its Remand Results opposition comments before this Court are limited to the sole argument that its own preferred conversion cost methodology is supported by substantial evidence. Defendant-Intervenor fails, however, to show that Commerce's finding that Dongkuk's costs required adjustment is unreasonable. The court's role, therefore, is to determine whether Defendant-Intervenor can "demonstrate that Commerce acted unreasonably." Dongkuk S&C Co. v. United States, 134 F.4th 1320, 1331 (Fed. Cir. 2025). "Where we are faced with two opposing views of the record, it is the function of the court to uphold Commerce's determination if it is supported by substantial evidence." Id.

Presented with such circumstances here, the court shall sustain Commerce's determination on remand.

**B. Commerce's Decision Not to Adjust Dongkuk's Direct Conversion Costs**

When Commerce examined Dongkuk's reported direct variable costs, it found that "unlike its indirect conversion costs, [Dongkuk's] direct VOH is 'directly traceable and assigned to the specific projects.'" Remand Results at 7. Commerce explained that Dongkuk's direct VOH costs traceability to specific projects eliminates the unexplained variations found in Dongkuk's monthly indirect conversion cost. Id. at 7–8. Accordingly, Commerce did not adjust Dongkuk's direct VOH conversion cost methodology, as it reasonably reflects the cost of producing the merchandise. See 19 U.S.C. § 1677b(f)(1)(A).

Given the court's holding that Commerce did not adequately address how three product characteristics (weight, height, and tower sections) were reflected in Dongkuk's conversion costs, Commerce explains that "Dongkuk's direct material costs, specifically its steel plate costs, correspond to most of the physical differences in these product characteristics." Remand Results at 6. Commerce points out that because "weight and height product characteristics are based on the wind tower's dimensions; by extension, most of the costs related to the differences in those product characteristics correspond to the amount of steel plate used to produce a given wind tower." Id. In Commerce's view, given the direct material costs' (including steel plates) proportion of the overall cost of manufacturing compared to conversion costs, direct material costs "most closely

correspond to the differences in these physical characteristics, not the conversion costs." Id.

In its opposition comments, Plaintiff argued that Commerce's Remand Results are not supported by substantial evidence because Dongkuk's direct VOH conversion costs do not reasonably reflect the physical characteristics of its merchandise, and instead should be adjusted to mirror Commerce's indirect conversion cost analysis. Pl.'s Opp'n Comments at 2. Specifically, Plaintiff argued that it is unreasonable for Commerce to conclude that steel plate costs and project-specific costs are related to the physical characteristics of the subject merchandise. In support, Plaintiff provided examples of VOH costs that contradict Commerce's conclusions that direct VOH costs correspond to physical characteristics of its merchandise. Id. at 5. Plaintiff concludes that Commerce should "make the same adjustment to direct VOH that it made to direct labor, indirect VOH, and indirect fixed overhead." Id. at 5.

Commerce disagreed that Dongkuk's reported direct VOH costs should be adjusted because the agency evaluated and determined that Dongkuk's direct VOH costs did not "suffe[r] from the same distortive allocation methodology as its indirect conversion costs" and was "reasonably reflective of the product characteristics." Remand Results at 12. Commerce responded that despite Plaintiff's contention "that Dongkuk's reported direct VOH is not reflective of the physical characteristics, . . . [Plaintiff] provides no basis for this alleged mismatch" and that Commerce will not make "adjustments to a respondent's reported costs under section 773(f)(1)(A) of the Act," where the respondent's reported costs reflect the physical characteristics and cost of production.

Id. at 13. Regarding Plaintiff's examples, Commerce argued that these comparisons of specific CONNUMs are "granular," unreasonable, "prone to cherry picking," and do not invalidate Commerce's "wider set of cost data where the differences in complexity are reflected in the aggregate." Id. at 14. Commerce defended its selected direct VOH cost methodology as "correspond[ing] to the complexity of the physical characteristics of the different CONNUMs, despite the existence of CONNUMs that do not reflect that relationship." Id. at 15. Commerce looked at Plaintiff's proposed examples and disagreed, finding that "the differences in those product characteristics are accounted for by the amount of steel plate consumed and the corresponding steel plate costs reported." Id. Commerce concluded by focusing on Plaintiff's examples and explained that those examples actually are: "consistent with [Commerce's] findings," display reasonable variations, or do not consider Commerce's finding that "weight and height of the tower should be reflected in the steel plate and direct materials costs as opposed to the conversion costs, including direct VOH." Id. at 18. As a result, Commerce made no changes from its Draft Results and filed its Remand Results.

Plaintiff now argues in this litigation that "Commerce has not explained why project-specific cost reporting means that Dongkuk's direct VOH costs reflect physical differences in the merchandised produced" and that "Commerce did not account for unexplained differences in direct variable overhead when it smoothed plate costs." Pl.'s Opp'n Comments at 3, 12. Plaintiff additionally argues that Commerce did not consider the relationship between direct VOH costs and physical characteristics (such as height and weight), and that Plaintiff's CONNUM comparison examples show that Commerce's

analysis of weight, height, and internal complexity is unsupported by substantial evidence. Id. at 5, 7.

The court disagrees. As an initial matter, Commerce noted that Dongkuk's direct VOH reported costs "are distinguishable from its reporting of indirect conversion costs." Remand Results at 13. Commerce explained that unlike Dongkuk's reported indirect conversion costs, Dongkuk's direct VOH costs were directly traceable to projects, recorded on a project-specific basis, and did not suffer from unexplained variations. Id. at 12–13. Therefore, while Dongkuk's indirect conversion costs did not reasonably reflect the cost of producing wind towers, Dongkuk's direct VOH costs were both recorded in its normal books and records and reasonably reflected the cost of producing the wind towers. See id. (citing 19 U.S.C. § 1677b(f)(1)(A)). Therefore, Commerce explained that it had no reason to adjust Dongkuk's direct VOH costs or smooth steel plate costs.

Plaintiff's argument that Commerce failed to consider the relationship between direct VOH, and weight and height product characteristics is similarly unpersuasive. Commerce explained that height and weight characteristic differences are accounted for in the steel plate costs and direct costs reported. Remand Results at 15. Commerce therefore considered this argument and instead found that direct costs, not conversion costs, more closely correspond to and account for the differences in weight and height. Id. at 6.

Finally, the court rejects Plaintiff's argument that Commerce's analysis of weight, height, and internal complexity is unsupported by substantial evidence. Pl.'s Opp'n Comments at 7–9. Commerce explained on remand that Dongkuk's direct VOH costs

reasonably reflect the costs to produce wind towers because of patterns observed between various characteristics of wind towers and the costs of producing the wind towers. Remand Results at 7–8. Commerce acknowledged and provided explanations for each of Plaintiff's example outliers, and explained that despite these few outliers, a "wider set of cost data where the differences in complexity are reflected in the aggregate" better reflects the cost of producing wind towers. Id. at 14. The court is mindful that "'[w]here Commerce is confronted with two alternatives (both of which have their good and bad qualities), and Commerce has a preferred alternative,' substantial evidence review means that [the court] 'will not second-guess Commerce's choice.'" SeAh Steel VINA Corp. v. United States, 950 F.3d 833, 842–43 (Fed. Cir. 2020). Accordingly, the court rejects Plaintiff's arguments and will sustain Commerce's determination as to direct VOH costs.

## IV. Conclusion

For the foregoing reasons, the court sustains Commerce's Remand Results. Judgment will be entered accordingly.

/s/ Leo M. Gordon
Judge Leo M. Gordon

Dated: September 4, 2026
New York, New York